**WISCONSIN BANKERS ASSOCIATION et al., Appellants**

v.

**Albert J. ROBERTSON et al., comprising the Federal Home Loan Bank Board, Appellees.**

**No. 16212.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 17, 1961.

Decided July 13, 1961.

Petition for Rehearing Denied
Aug. 10, 1961.

Mr. Harvey W. Peters, Milwaukee, Wis., with whom Messrs. Percy W. Phillips, H. Stewart Dunn, Jr., and Johannes R. Krahmer, Washington, D. C., were on the brief, for appellants.

Mr. Albion W. Fenderson, Attorney, Federal Home Loan Bank Board, of the bar of the Supreme Court of Maine, pro hac vice, by special leave of court, with whom Messrs. Thomas H. Creighton, Jr., General Counsel, Federal Home Loan Bank Board, Ray E. Dougherty, Max Wilfand, and Paul E. McGraw, Attorneys, Federal Home Loan Bank Board, were on the brief, for appellees.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and BURGER, Circuit Judges.

WILBUR K. MILLER, Chief Judge.

In their complaint, filed June 25, 1958, the appellants asked the United States District Court to declare unauthorized and illegal certain regulations and charter provisions for federal savings and loan associations promulgated by the appellees in 1949. They also asked the District Court to order that the 1949 regulations "generally be restored to the original regulations prevailing prior to March 7, 1949 * * *." In a pre-trial statement the parties agreed that the District Court first determine two legal issues, and that trial of the action would not be necessary unless both were decided in favor of the plaintiffs [appellants]. The issues were thus stated in an order of the District Court:

"(a) The legality of the regulations (and charter provisions) promulgated and maintained by defendants as a Board since on or about March 7, 1949.

"(b) The plaintiffs' legal standing to sue upon the basis of the defendants stipulating for purpose of determining this question that the business of banking may be conducted in Wisconsin by only such organizations, including plaintiffs, as are chartered to operate as banks, and upon the assumption for the purpose of determining this question that the factual allegations of the complaint are true. * * *"

Argument was heard on the agreed issues and thereafter, in a carefully considered opinion, reported in 1960, 190 F.Supp. 90, the trial judge held that the plaintiffs had standing to sue but that the challenged regulations and charter provisions are authorized and legal. Consequently, the complaint was dismissed.

This appeal by the Wisconsin banks and bankers brings before us only the holding that the regulations and charter provisions are valid, for "An appeal brings up for review only that which was decided adversely to the appellant." Loudon v. Taxing District, 1881, 104 U.S. 771, 774, 26 L.Ed. 923. As a cross appeal was not filed by the appellees, we cannot consider, and therefore express no opinion concerning, their argument that the District Court erred in holding the appellants had standing to sue. In the absence of a cross appeal, an "appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary * * *." United States v. American Ry. Exp. Co., 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087. In Morley Co. v. Maryland Casualty Co., 1937, 300 U.S. 185, 191, 57 S.Ct. 325, 328, 81 L.Ed. 593, Mr. Justice Cardozo said this "rule is inveterate and certain."

The general theory of the complaint is that the challenged regulations and charter provisions are not in accord with Section 5 of the governing statute,[1]

1. Section 5 of the Home Owners' Loan Act of 1933, as amended, 48 Stat. 132, 12 U.S. C.A. § 1464, is, in pertinent part, as follows:

"(a) *Organization authorized.* In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the

which provides that federal savings and loan associations "shall raise their capital only in the form of payments on such shares as are authorized in their charter" and that "No deposits shall be accepted * * *" by them.

We recently held that a "share" in a federal savings and loan association is an investment, and is not equivalent to the deposit of money in a bank.[2] But the appellants here contend the 1949 regulations unlawfully permit federal savings and loan associations to raise capital by payments on "savings accounts" instead of on "shares" as the statute requires; that under this provision, the holder of a savings account in a federal savings and loan association is a creditor of the association just as a holder of a savings account in a bank is a creditor of the bank; and that, therefore, the provision authorizes the acceptance of deposits. They argue that, as a result of this and other related provisions of the 1949 regulations, federal savings and loan associations in Wisconsin are accepting deposits and so illegally engaging in the banking business in competition with the duly chartered banks of that state.

The appellants principally rely for support of their theory of illegality upon the 1949 regulation which defines "capital" as "the aggregate of the payments on savings accounts in a Federal association, plus earnings credited thereto, less lawful deductions therefrom." Whether this regulation is in accord with Section 5(b) of the Act depends upon the meaning of the term "savings account." If it means an account similar to a savings account in a bank with respect to which the bank is debtor to the depositor, the regulation is repugnant to Section 5(b), for two reasons: (a) payments on such savings accounts cannot be payments on "shares" of capital, as contemplated by the statute, and (b) it violates the provision that "No deposits shall be accepted * * *." On the other hand, if the term "savings accounts" was used to mean "shares" of an association's capital, the regulation is in accord with Section 5(b).

The section of the 1949 regulations which defines capital in terms of payments on savings accounts is immediately followed by a section which defines the term "savings account" as "the monetary interest of the holder thereof in the capital of a Federal association and consists of the withdrawal value of such interest." It seems quite clear, therefore, that the words "savings accounts" in the regulation defining "capital" have the same meaning as the word "shares" in the statutory provision governing the raising of capital.

It is suggested, however, that the term "savings accounts" has a special significance and is generally understood to describe such accounts in banks, with the result that its use in the regulation concerning the raising of capital permits the associations to accept deposits just as banks accept them. This suggestion assumes that the regulation defining "capital" as the "aggregate of payments on savings accounts" will be read without reference to the succeeding regulation which defines "savings account" as a share of capital. It also assumes that the term "savings account" has come to be restricted in its meaning to such an

---

financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States.

"(b) *Capital; deposit; certificates of indebtedness.* Such associations shall raise their capital only in the form of payments on such shares as are authorized in their charter, which shares may be retired as is therein provided. No deposits shall be accepted and no certificates of indebtedness shall be issued except for such borrowed money as may be authorized by regulations of the Board."

2. Aetna Casualty and Surety Co. v. Porter, 1961, 110 U.S.App.D.C. ——, —— F.2d ——.

account in a bank, and may not be used as having any other significance. We do not agree to either assumption.

Other 1949 regulations and charter provisions are attacked as unauthorized and illegal, mainly on the theory that they tend to confirm the allegation that the associations have been authorized to accept deposits in competition with banking institutions. Among them are these provisions: (1) that which requires an association to obtain a signature card upon issuance of a savings account; (2) that which requires that a member be furnished with a copy of the charter and by-laws only upon request; (3) that which permits the withdrawal value of a savings account to be paid at any time; (4) that which requires that earnings, after payment of expenses and credits to reserves, be distributed semi-annually on savings accounts; (5) those which declare that "Holders of savings accounts for which application for withdrawal has been made shall remain holders of savings accounts and shall not become creditors," and that "All savings accounts shall be non-assessable;" and (6) that which prescribes the following form of subscription to capital by organizers of an association:

> "Having been given permission to organize a Federal association, the undersigned hereby subscribe for the amount of capital indicated below, and contract to pay into a savings account, upon the issuance of a charter, the amount of cash stated opposite their respective names below. We agree to cooperate in the development of such an association for the promotion of local savings and home-financing."

The mere statement of the regulations and charter provisions referred to in the preceding paragraph refutes the allegation of illegality with respect to them, particularly in view of the fact that we hold valid the regulations which define "capital" and "savings account." All the challenged provisions seem to us to be consistent with the statute, and to have been validly promulgated thereunder. As the District Court so held, its judgment will not be disturbed.

Affirmed.

BURGER, Circuit Judge (concurring).

I concur fully with Chief Judge MILLER's opinion. The essence of appellant's claim is that under the challenged regulations federal savings associations are permitted to look and act more and more like banks and should be deemed therefore to be engaged illegally in banking business. I am constrained to concede that these associations are indeed coming to be regarded by the public much as the equivalent of a bank. For a great number of people they are a substitute for a bank and in that sense compete directly with banks. But Congress was and is well aware of these factors.

We are not like a "super trade commission" charged with duties relating to advertising practices or even operating practices[1] of these associations. The superficial similarities of the associations to banks is admittedly very great. But, we are concerned not with appearances but with legal realities; it is here that the differences are marked as Judge Miller has pointed out. The capital of a federal savings association is raised by payments on share interests. Calling them "payments" on "savings accounts" does not alter their legal status. That the payment may be regarded by the customer as a "deposit" or even called at times a deposit by the association does not make it a legal counterpart of a deposit in a bank. The "depositor" in a federal association is not a creditor as is the depositor in a bank. Anderson Nat. Bank v. Luckett, 1944, 321 U.S. 233, 241–242, 64 S.Ct. 599, 88 L.Ed. 692. He is an investor, as the very language of Section 5(b) of the Home Owners Loan Act describes the relationship. The owner of a "savings account" in the association is entitled to vote, in much the same way as a stockholder in a corporation, to elect

---

1. There is no claim that the associations are violating the regulations.

the management. The Act under which they exist recites the congressional purpose which emphasizes the "investment" character of these shares and distinguishes them from the creditor debtor relationship between a bank account depositor and a bank. Congress authorized the Board to create these associations.

"In order to provide local mutual thrift institutions in which people may *invest* their funds *and* in order to provide for the financing of homes * * *." 12 U.S.C.A. § 1464(a). (Emphasis added.)

The contentions urged upon us by appellants are essentially economic arguments which might better be addressed to the Legislative Branch under whose authority these associations exist.