James K. TALLMAN et al., Appellants,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

No. 17598.

United States Court of Appeals District of Columbia Circuit.

Argued June 13, 1963.

Decided Sept. 19, 1963.

Petition for Rehearing Denied Oct. 16, 1963.

Mr. Charles F. Wheatley, Jr., Washington, D. C., with whom Mr. Robert L. McCarty, Washington, D. C., was on the brief, for appellants.

Mr. Edmund B. Clark, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Ramsey Clark and Messrs. S. Billingsley Hill and Herbert Pittle, Attys., Dept. of Justice, were on the brief, for appellee. Mr. Roger P. Marquis, Atty., Dept. of Justice, also entered an appearance for appellee.

Before WILBUR K. MILLER, BASTIAN and McGOWAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from summary judgment of the District Court in favor of the Secretary of the Interior in an action to review his decision rejecting appellants' applications for oil and gas leases on land within the Kenai National Moose Range in Alaska.

Since appellants' main attack is on the Secretary's authority to draw various

historial conclusions, the chronology of the creation of the moose range and its opening for oil and gas leasing is necessary.

The Kenai National Moose Range was established by Executive Order No. 8979 [1] of December 16, 1941. The order, which covered all but a small part of the subject lands, withdrew and reserved the area for the protection of the Kenai moose and provided that none of the lands:

"shall be subject to settlement, location, sale, or entry, or other disposition (except for fish trap sites) under any of the public-land laws applicable to Alaska, or to classification and lease under the provisions of the act of July 3, 1926 * * * 44 Stat. 821, U.S.C., title 48, secs. 360–361, or the act of March 4, 1927 * * * 44 Stat. 1452, U.S.C., title 48, secs. 471–471*o*."

Subsequently, Public Land Order No. 487 [2] of June 16, 1948, withdrew the portion of the subject lands excepted by the 1941 Executive Order.

Between October 15, 1954, and January 28, 1955, certain parties filed applications for oil and gas leases on lands covered by the 1941 and 1948 orders. No immediate action was taken on these applications because, in 1953, the Director of the Bureau of Land Management had suspended action on all *pending* oil and gas lease offers until completion of a study of possible changes in policy and regulations related to the issuance of oil and gas leases within wildlife refuges. Ultimately, these parties were awarded leases on the land in question.

In 1955 the Government began to restore the Kenai National Moose Range to certain private acquisition. First, Public Land Order No. 487 was revoked by Public Land Order No. 1212 [3] of September 9, 1955, which provided initially that a small piece of land (not involved in the present suit) was:

"2. Subject to valid existing rights * * * withdrawn from all forms of appropriation under the public-land laws, including the mining but not the mineral-leasing laws, and reserved under the jurisdiction of the Bureau of Land Management, Department of the Interior, for recreational purposes. * * * *"

The order then proceeded to deal with the remainder of the land restored. After granting preference for homesteading, it provided:

"6. Any of the lands described in paragraphs 4(a), 4(b) or 4(d) of this order then remaining unappropriated, shall become subject to such application, petition, selection, or other form of appropriation by the public generally as may be authorized by the public-land laws, including the mineral-leasing laws * *.

"7. Commencing at 10:00 a. m. on the 182nd day after the date of this order, any of the unsurveyed lands described in paragraph 4(c) not settled upon by veterans or other persons entitled to credit for service shall become subject to settlement and other forms of appropriation by the public generally, including leasing under the mineral-leasing laws * * *."

On October 4, 1955, Public Land Order No. 1212 was amended [4] to delete the provisions for leasing under the mineral-

1.  6 Fed.Reg. 6471.

2.  13 C.F.R. 3462. The order stated:
    "Subject to valid existing rights, the public lands [described] in Alaska are hereby temporarily withdrawn from settlement, location, sale or entry, for classification and examination, and in aid of proposed legislation.

"This order shall take precedence over, but shall not modify * * * the reservation for the Kenai National Moose Range made by Executive Order No. 8979 of December 16, 1941 * * *."

3.  20 Fed.Reg. 6795.

4.  20 Fed.Reg. 7904.

leasing laws appearing in paragraphs 6 and 7 of the order.

Finally, on January 8, 1958, an amendment to 43 C.F.R. 192.9 [5] provided:

"(b) *Leasing policy and procedure.* \* \* \* (3) As to \* \* Alaska wildlife areas, representatives of the appropriate office of the Bureau of Land Management and the United States Fish and Wildlife Service will confer for the purpose of entering into an agreement specifying those lands which shall not be subject to oil and gas leasing. \* \* \*

"(4) The remaining lands \* \* \* not closed to oil and gas leasing will be subject to leasing. \* \* \*

"(c) *Publication and filing of agreements; filing of lease offers.* The agreements referred to in paragraph (b) (3) of this section shall be published in the Federal Register. \* \* \* The agreements, as supplemented by maps or plats specifically delineating the lands will be filed in the appropriate land offices of the Bureau of Land Management. \* \* \* Lease offers for such lands will not be accepted for filing until the tenth day after the agreements and supplemental maps or plats are noted on the land office records."

The Bureau of Land Management and the Fish and Wildlife Service concluded their agreement and it was approved by the Secretary of the Interior. The order of the Secretary was published on August 2, 1958,[6] designating the lands in the Moose Range which were not subject to oil and gas leasing, and providing that the balance of the lands within the Range were subject to the filing of oil and gas lease offers. The order stated:

"Offers to lease covering any of these lands which have been pending and upon which action was suspended \* \* \* will now be acted upon and adjudicated in accordance with the regulations."

The order also stated that all lease offers filed within ten days after the date established by regulation 43 C.F.R. 192.9 for acceptance for filing would be treated as simultaneously filed, and further:

"The priorities of all offers which conflict in whole or in part will be determined in accordance with the procedures outlined in the regulation 43 C.F.R. 295.8." [7]

On or after August 14, 1958, appellants filed their respective offers to lease [8] pur-

---

5. This regulation provided a comprehensive plan for oil and gas leasing of wildlife refuge lands, including the Kenai National Moose Range.

6. 23 Fed.Reg. 5883.

7. 43 C.F.R. 295.8: *"Processing of simultaneous applications.* All applications, which term includes offers to lease, filed pursuant to the regulations in any part of this chapter will be regarded as having been filed simultaneously within the meaning of this section where by reason of an order of restoration or opening, or a notice of the filing of a plat of survey or resurvey, they are filed in the manner and within the period of time for the filing of simultaneous applications provided for in such order or notice. \* \* \*
\* \* \* \* \*
"(b) All such applications which conflict in whole or in part will be included in a drawing which, except as provided in paragraph (c) of this section will fix the order in which the applications will be processed.
"(c) All applications included in the drawing will be subject to any priority to which any particular applicant may be entitled on account of a preference right conferred by law or regulations."

8. All of the appellants, except Waldo E. Coyle, filed their offers for land covered by Executive Order No. 8979 of December 16, 1941. Coyle filed an offer for land originally excluded by that order but subsequently included in Public Land Order No. 487 of June 16, 1948. The land covered by the 1948 order was opened to oil and gas leasing by Public Land Order No. 1212 of September 9, 1955, as modified by the amendment of October 14, 1955. The applicants awarded priority over Coyle filed their offers prior to Order No. 1212, so the question presented by Coyle is whether Order No. 487 closed the land to oil and gas leasing.

suant to § 17 of the Mineral Leasing Act, as amended, 30 U.S.C. § 226 (Supp. III, 1958).

Some time after appellants' applications had been filed, the Department of the Interior, without notice to appellants, issued leases for the lands in question to the representatives of major oil companies based on offers filed by them between October 15, 1954, and January 28, 1955, as above stated.

On September 4, 1959, a little more than a year after the filing of appellants' offers, a public drawing was held to determine the priorities between simultaneously filed oil and gas lease offers pursuant to the provisions of 43 C.F.R. 295.8. Appellants prevailed in this public drawing, in which the oil companies were not represented. But their victory was short-lived, for their lease offers were rejected by the Anchorage Land Office on the grounds that they conflicted with the leases issued the previous fall.

Appellants duly appealed to the Director of the Bureau of Land Management, where their appeals were denied in decisions rendered in July, 1960. Appeals from these decisions were taken to the Secretary of the Interior and were rejected by a deputy solicitor of the Department in an opinion dated September 1, 1961, granting leases within the Range based on the 1954 and 1955 offers. A petition for the exercise of supervisory authority by the Secretary of the Interior was filed on February 15, 1962. This petition was denied *on the merits* on April 25, 1962.

Thereafter, and on June 8, 1962, appellants filed this suit in the District Court against the Secretary of the Interior. The Secretary first filed a motion to dismiss based on the ninety-day statute of limitations contained in 30 U.S.C. § 226—2 (Supp. III, 1958). Then both sides moved for summary judgment. The District Court granted the motion of the Secretary for summary judgment and denied the motions of appellants for summary judgment, specifically stating that the ground of non-compliance with the statute of limitations did not form a part of his decision, and further specifically denying the Secretary's motion to dismiss based, as stated, on the ninety-day statute of limitations. Appellants appealed to this court on December 31, 1962.

Appellants' principal contention is that the 1941 Executive Order closed to oil and gas leasing the land in the Kenai National Moose Range covered by that directive, and that this land remained closed until it was opened by the amendment of 43 C.F.R. 192.9 in January 1958. They argue that the order prohibits "disposition [of any lands within the Range] (except for fish trap sites) under any of the public-land laws applicable to Alaska," and, since the Mineral Leasing Act of 1920, 41 Stat. 437, as amended, is a "public-land law applicable to Alaska," it follows that oil and gas leasing under that Act is prohibited.

We think the Executive Order clearly did remove the land involved from oil and gas leasing and appellants' contention in this regard is correct. And there is no doubt that the Mineral Leasing Act of 1920 is a public-land law applicable to Alaska.[9]

The Secretary argues, however, that the acts of July 3, 1926, and March 4, 1927, specifically included in the 1941 order, are also public-land laws applicable to Alaska, and that, consequently, the order could not have been designed to include all such public-land laws but only those laws relating to the complete alienation of the title of the United States in the land. The Secretary argues that, since the Mineral Leasing Act does not provide for the alienation of the title of the United States, and since the order did not expressly withdraw the lands from the operation of that Act, the land covered by the 1941 order was open to oil and gas leasing in 1954 and 1955, when the offers conflicting with appellants' offers were filed.

9. 43 C.F.R. 71.1 (1954).

There are persuasive counter-arguments to the Secretary's contentions. As the deputy solicitor himself noted, the acts specifically included in the Executive Order, unlike the Mineral Leasing Act, are not public-land laws of general applicability throughout the United States but are laws applicable only to Alaska. We think the phrase "public-land laws applicable to Alaska" means those laws of general applicability throughout the country which are made applicable to Alaska by the act of August 24, 1912, 37 Stat. 512, 48 U.S.C. § 23, 43 C.F.R. 51.1; otherwise, the order would not have included the two acts specifically mentioned.

The specific exemption for fish trap sites in the order strengthens our conviction. If the order were designed to cover only the total alienation of the interest of the United States, then specification of fish trap sites would be unnecessary, for permission to fish by traps is acquired not by deed but by a license, similar in many respects to a lease. Furthermore, the specific inclusion of one exception in the order indicates that other exceptions should not be implied (as the Secretary urges) but that the prohibition on disposition should be read in an expansive manner.

Appellants make copious reference to the Pickett Act of June 25, 1910, 36 Stat. 847, 43 U.S.C. § 141, pointing out the similarity between the wording of that statute and the Executive Order of 1941 and the Public Land Order of 1948. Using this evident similarity, they urge that the cases which have construed the Pickett Act to permit the President to withdraw public lands from oil and gas leasing [10] also provide judicial interpretation of the 1941 and 1948 orders. The cases dealing with the Pickett Act certainly are not dispositive of the question before us, but they are not wholly irrelevant since they do indicate that it is more likely that these words were used to provide expansive coverage rather than the narrow coverage the Secretary now urges.

■ In sum, we hold, as to all appellants other than Coyle, that the lands in the Kenai National Moose Range were closed to oil and gas leases by the terms of the order creating the Range in 1941 until it was opened on August 2, 1958. Accordingly, the leases issued to parties other than those appellants were a nullity because applications therefor were filed prior to the opening of the Range to leasing. While the lands filed on by appellant Coyle present a somewhat different picture from those of the other appellants, no material difference exists between his claim and theirs. The lands on which Coyle filed were originally opened by the 1941 order, but they were closed in 1948 by Order No. 487 and remained closed during the time the offer conflicting with his application was filed. These excepted lands were reopened by Order No. 1212 on September 9, 1955, but no new offers were filed thereafter on the lands covered by the Coyle application. As to the lands filed on by Coyle, we hold that the leases issued to parties other than Coyle were a nullity because applications therefor were filed prior to the opening of the Range to oil and gas leasing.

■ In reversing the Secretary's interpretation of the 1941 order creating the Kenai National Moose Range, we are aware of the discretion granted agencies in the interpretation of statutes and presidential orders in areas committed to their administration. Deference to agencies does not reach the extent of sanctioning irrational agency action, however; nor does it permit an agency to frustrate judicial review by issuing a series of confusing and possibly conflicting orders, and then urging that the agency's resolution of the confusion and conflict is not unreasonable since no resolution of such confusion could be called unreason-

10. Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 57 S.Ct. 51, 81 L.Ed. 42 (1936); Wilbur v. United States ex rel. Barton, 60 App.D.C. 11, 46 F.2d 217 (1930), aff'd sub nom. United States ex. rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148 (1931).

able. In the case before us the Secretary's interpretation of the 1941 order seems to us unreasonable and should not stand.

The Secretary concedes that, if this court determines that any of the orders closed the Moose Range to oil and gas leasing, the only possible defense would be based on 30 U.S.C. § 226—2, which provides:

"No action contesting a decision of the Secretary involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter."

Admittedly, appellants commenced this action more than five months after the order of the deputy solicitor, acting for the Secretary of the Interior, was filed. However, on April 25, 1962, the Secretary entertained and denied appellants' petition for the exercise of supervisory authority; and the present action was filed within ninety days thereafter. The Secretary argued before the District Court, and again argues before us, that the ninety-day statute of limitations bars this action.

We think the Secretary's reliance on the statute of limitations is without merit. The principle which governs this question is set down in Outland v. Civil Aeronautics Bd., 109 U.S.App.D.C. 90, 284 F.2d 224 (1960).[11]

■■ When a party elects to seek a rehearing there is always the possibility that the order complained of will be modified in a way which would render judicial review unnecessary. Practical considerations, therefore, dictate that, when a petition for rehearing is filed, judicial review may be properly deferred until the petition has been acted upon. We hold, in the circumstances presented here, that the time for filing a petition for judicial review did not begin to run until the petition for rehearing had been acted upon.

The Secretary argues that this rule applies "only where the rules of practice of an administrative agency provide for a petition for rehearing or reconsideration and when one is timely filed." He argues that "there is no provision by statute or regulation permitting, much less giving, the right to file a petition for reconsideration [of a decision by the deputy solicitor]." A petition to the Secretary for the exercise of supervisory authority is a long standing procedure within the Department of the Interior, which, although not spelled out by statute or regulation, serves many of the same purposes of a petition for rehearing.

The Secretary correctly points out that he has the right to exercise his supervisory power so long as the property in question remains within his jurisdiction. Thus he argues that the time for petitioning for the exercise of his supervisory power might be limitless and the provisions of 30 U.S.C. § 226—2 rendered nugatory, for a party losing a decision in the Department could delay his entry into court indefinitely by delaying his petition for the exercise of supervisory power. This argument fails to consider the power of the Secretary to formulate his own rules concerning the submission of the petition. The Secretary can prevent undue delay by setting time limits on these petitions. He is not at the mercy of the losing party, but he can force that party, by appropriate rules or adjudication, to bring petitions for the exercise of supervisory power within a certain time.

In the present case, the Secretary did not reject appellants' petition because it was filed too late, but, rather, he rejected it on the merits. The letter rejecting appellants' petition cannot be read as "an orderly manner of indicating that the [original] communication had been

11. See also Montship Lines v. Federal Maritime Board, 111 U.S.App.D.C. 160, 295 F.2d 147 (1961). Safeway Stores v. Coe, 78 U.S.App.D.C. 19, 136 F.2d 771 (1943) is not in point for in that case the Secretary did not lose his jurisdiction to decide on the merits the question presented in the petition.

received," but must be read as a rejection of the petition on the merits. Under the circumstances, we believe that appellants may seek review of the order of the Secretary within ninety days after the final rejection of their application on the merits. This they had done.

A different result might well be reached had the Secretary rejected appellants' petition for the exercise of supervisory authority on the ground that it was filed too late; but, as stated, he did consider it and denied it on the merits.

It follows that the action of the District Court should be reversed, and judgment entered for appellants.

Reversed.

McGOWAN, Circuit Judge, with whom WILBUR K. MILLER, Circuit Judge, joins (concurring).

We concur fully in the reasons set forth by Judge Bastian for the reversal of the judgment of the District Court. We believe, however, that there is an additional ground why the appellee may not, in this court, press the claim that the statute of limitations bars the relief sought by appellants.

It is clear, in our view, that the District Court passed upon the statute of limitations point adversely to the appellee. The record shows that two separate motions were filed in the District Court by the appellee: one, a motion for summary judgment on the merits, in which was included a statute of limitations ground, and, two, a motion to dismiss the complaint based solely upon the statute of limitations. In its memorandum opinion granting the first such motion, the District Court expressly excepted "that part of the Defendant Udall's motion for summary judgment based on the grounds of non-compliance with the statute of limitations * *," and stated that that part "should not form part of the basis for the granting of Defendant Udall's motion for summary judgment and, accordingly, Defendant Udall's motion to dismiss is denied." In the judgment subsequently entered pursuant to this memorandum, the ordering portions recited explicitly that "Defendant's motion to dismiss is denied." The appellee has taken no appeal from this part of the judgment adverse to him.

In the absence of such an appeal, we do not believe that appellee is free to raise the statute of limitations here as a basis of affirmance. Our conclusion in this regard rests on authority of long standing. In Morley Construction Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593 (1937), Justice Cardozo, speaking for a unanimous court, said that "[T]he rule is inveterate and certain." There, the plaintiff surety had sought specific performance of a contract supplemental to an agreement of suretyship or, alternatively, exoneration by the contractor of the surety from loss on unpaid bills. The District Court held the surety not entitled to the specific performance requested, but did grant the relief of exoneration. It entered a decree reflecting these dispositions. The contractor appealed from the grant of exoneration, but no cross-appeal was taken by the surety from the denial of specific performance. The Court of Appeals concluded that specific performance, rather than exoneration, was the proper relief and sent the case back with directions to the District Court to revise its judgment to this end.

The Supreme Court held that it was error for the Court of Appeals to take this action at the instance of a non-appealing, albeit successful, litigant. It cited a number of cases, including an early decision of the Supreme Court, wherein it was said:

"Where each party appeals each may assign error, but where only one party appeals the other is bound by the decree in the court below, and he cannot assign error in the appellate court, nor can he be heard if the proceedings in the appeal are correct, except in support of the decree from which the appeal of the

other party is taken." The Maria Martin, 12 Wall. 31, 40–41, 20 L.Ed. 251.

One of the cases relied upon by Justice Cardozo was Peoria & Pekin Union Ry. Co. v. United States, 263 U.S. 528, 44 S.Ct. 194, 68 L.Ed. 427 (1924). There, the United States had prevailed below on the merits, but it had also contended in the lower court that the venue was improperly laid. This latter point was resolved against it, but on appeal it was renewed. Justice Brandeis, speaking for the entire court, said (at 263 U.S. p. 536, 44 S.Ct. p. 197) that "* * * by failure to enter a cross appeal from the court's action in overruling its objection, the right to insist upon it here was lost. The appellees can be heard before this Court only in support of the decree which was rendered."

This court has recognized this principle. In Wisconsin Bankers Association v. Robertson, 111 U.S.App.D.C. 85, 294 F.2d 714, cert. denied, 368 U.S. 938, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961), the case was litigated below both on the merits and on a challenge to plaintiff's standing to sue. The defendants prevailed on the former, but suffered an adverse ruling on the latter. The standing point was renewed on appeal, but this court said: "As a cross appeal was not filed by the appellees, we cannot consider, and therefore express no opinion concerning, their argument that the District Court erred in holding that appellants had standing to sue. In the absence of a cross appeal, an 'appellee may not attack

the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary * *.' United States v. American Ry. Exp. Co., 1924, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087. * * *"[1] See also, Whitehead v. American Security & Trust Co., 109 U.S.App.D.C. 202, 285 F.2d 282 (1960).

It may seem anomalous at first blush that a successful litigant in the lower court should be under any necessity whatsoever of appealing from the decree which brought him victory. But the judgment may, as here, be comprised of several elements, adverse as well as favorable. If the prevailing party wishes to rely on appeal on a contention decided against him, he must preserve his rights by an appeal. This can be by a cross-appeal if time permits after his opponent has appealed, or it may be by a timely notice of appeal which can be dismissed if the other party elects not to pursue the litigation further. In the absence of such a preservation of the point, the successful litigant must be taken to have regarded the grounds upon which he won as so strong that he is content to rely upon them alone in the appellate proceedings.

The defense of the statute of limitations is not jurisdictional and it may be waived at any time. By failing to appeal from the denial of his motion to dismiss founded upon the statute, the appellee here made such a waiver and cannot now attack that part of the judgment with which he disagrees.

---

1. 111 U.S.App.D.C. at 86, 294 F.2d at 715. The Railway Express case appears to have involved a situation where the lower court did not in fact decide or pass upon the ground sought to be raised on appeal. In this situation the successful litigant may well be able to renew the point on appeal as a basis of affirmance. Justice Brandeis reaffirmed the force of the Peoria & Pekin Union Ry. holding by this reference (n. 11 on p. 436 of 265 U.S. on p. 564 of 44 S.Ct. 68 L.Ed. 1087): "* * * There the objection upon which the appellee relied was one of venue. The District Court overruled it; and then dismissed the bill on the merits. An objection to venue can be waived at any stage of the proceeding. This Court held that it was waived by failure to take a cross-appeal."