COPPER VALLEY MACHINE WORKS, INC., Plaintiff,

v.

Cecil D. ANDRUS et al., Defendants.

Civ. A. No. 78–1572.

United States District Court, District of Columbia.

June 29, 1979.

A. Karen Hill, Washington, D. C., for plaintiff.

Lawrence R. Liebesman, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

*Introduction*

This matter is before the Court on cross-motions for summary judgment. Upon consideration of these motions, memoranda in support thereof and the entire record, the Court concludes that there are no genuine issues of material fact and that defendants are entitled to judgment as a matter of law.

Plaintiff, Copper Valley Machine Works, Inc. (hereinafter "Copper Valley"), as designated operator, is before the Court seeking an order directing the Secretary of the Interior to extend by one year the term of non-competitive Oil and Gas Lease No. A–063937. This lease was originally issued to Edward M. Devine on February 1, 1966 for a primary term of ten years pursuant to 30 U.S.C. § 226(e).

Copper Valley applied for a permit to drill an exploratory well on Lease A–063937 on January 19, 1976. The permit was issued by the United States Geological Service (hereinafter "USGS") on January 30, 1976, subject to the conditions that drilling operations be conducted during the winter season only and that the access trails could not be used during the period of April 15 through November 15 unless the Bureau of Land Management gave its approval. Copper Valley made no objection to these conditions and commenced drilling on January 31, 1976, the last day of the primary lease.

Lease A–063937 was extended for two years from January 31, 1976, pursuant to 30 U.S.C. § 226(e) and 43 C.F.R. § 3107.2–3 because USGS found on April 28, 1977, that diligent drilling operations were being conducted on the leasehold at the time the primary term of the lease ended.

On January 20, 1978, Copper Valley wrote to USGS stating that its operations had been suspended by order of the United States Government for a total of twelve months during the two-year lease extension, and requesting that its lease be extended to allow twelve additional months of operations to compensate for the two periods of summer shutdown in 1976 and 1977.

On May 22, 1978, the Secretary of the Interior denied what he construed to be a requested 12-month suspension of operations and production for the lease pursuant to 43 C.F.R. § 3103.3–8.[1] On July 17, 1978, the Acting Oil and Gas Supervisor, Alaska Area, informed Copper Valley of the Secretary's denial of its request, and on August 18, 1977, Copper Valley filed this lawsuit complaining that the Secretary's denial was unlawful and praying for a declaratory judgment and mandamus to the Secretary, ordering that Copper Valley be permitted to conduct operations on the lease to compensate for the twelve months of the lease term during which operations were interrupted.

*Discussion*

 The core of this matter is whether the winter-only operating restriction on Copper Valley's drilling permit constituted a "suspension of operations and production" under the lease within the meaning of 30 U.S.C. § 209 as argued by plaintiff, thereby entitling it to a mandatory compensating extension, or whether the restriction was a condition imposed by the drilling permit and incorporated into the lease so that the Secretary had the authority to deny properly the request under 43 C.F.R. § 3103.3–8(a) because plaintiff had not established a well capable of production on the leasehold.[2]

In support of its position that the winter-only restriction constituted a "suspension of operations and production," plaintiff argues that its original lease contained no winter-only restriction, and that its extension entitled it to an additional two years of the full enjoyment of the rights contained in the lease. The Court, however, concludes that all provisions of the drilling permit, which was issued during the primary term of the lease, were incorporated into the lease. Plaintiff has cited no authority which convinces this Court otherwise. These winter access conditions were designed to protect the surface environment and prevent pollution. They were imposed as part of the Secretary's approval of the permit to drill. They were agreed to by plaintiff.[3] They could have been imposed at any time the lease operator applied for a drilling permit. That the Secretary has the authority and responsibility to protect the environment of public lands within federal oil and gas leases is beyond dispute. This Circuit recognized that responsibility in *California Company v. Udall,* 111 U.S.App.D.C. 262, 296 F.2d 384 (1961), holding that under the Mineral Leasing Act, the Secretary of the Interior

> has a responsibility to insure that these resources are not physically wasted and that their extraction accords with prudent principles of conservation. At 388.

---

1. By letter of February 28, 1978, the USGS informed Copper Valley that because oil and gas in paying quantities had not been established prior to January 31, 1978, the date ending the two-year extension, the lease expired by operation of law on that date. For that reason, USGS treated this request as an application for suspension of operation pursuant to 43 C.F.R. § 3103.3–8.

2. The last sentence of 43 C.F.R. § 3103.3–8(a) directs that the burden of showing the necessi-

ty in the interest of conservation for the relief afforded by that regulation was on the plaintiff. Plaintiff has made no such showing, and it is therefore stripped of any argument that the Secretary's denial was arbitrary and capricious.

3. Under 30 U.S.C. § 209, a lessee need not pay acreage rental during the period of suspension of operations and production. Plaintiff continued to pay rentals under the lease without protest.

That the Secretary may impose restrictions on lease terms in fulfillment of this responsibility is also settled. As stated by this Court in *Natural Resources Defense Council v. Berklund,* 458 F.Supp. 925 (1978),

> The Secretary has the discretion to incorporate general standards into the lease which are aimed at ameliorating environmental damage but which may not be susceptible to valuation as costs to the permittee.

The Court finds that the Secretary reserved the right to exercise this discretion in § 4 of plaintiff's lease, which in pertinent part, is set forth in the margin.[4]

 The Court notes that the legislative history of 30 U.S.C. § 209 indicates that Congress was principally concerned with extraordinary situations where the Secretary orders the suspension of drilling to the surprise of the lessee in order to conserve oil and gas or where the lessee requested and the Secretary assented to a suspension. *See* H.R.Rep.No.1317, 79th Cong., 1st Sess. (June 30, 1932) p. 3 and 76 Cong.Rec. and 705 (Dec. 19, 1932).

Copper Valley's reliance on *Gulf Oil Corp. v. Morton,* 493 F.2d 141 (1973) and *Union Oil Company of California v. Morton,* 512 F.2d 743 (1975) is misplaced. Both cases dealt with a direct suspension order by the Secretary under 43 U.S.C. § 1331, *et seq.* of operations in the Santa Barbara Channel after a dangerous oil spill. Those cases involved direct secretarial action to mitigate an unexpected event, so are properly termed "suspension of operations and production" within 30 U.S.C. § 209.

In view of the Court's conclusion that the winter-only restriction was a condition imposed on the lease, the Court directs its attention to the pertinent administrative and judicial review provisions of the U.S. Code and Code of Federal Regulations. Under 30 C.F.R. § 221.21, the Area Oil and Gas Supervisor has been delegated authority for reviewing and approving plans related to an oil and gas lessee's application for a permit to drill on the leasehold. On January 30, 1976, the USGS approved plaintiff's application to drill subject to the "winter only" operation restrictions. Plaintiff never sought administrative review of this restriction pursuant to the prescribed procedure in 30 C.F.R. § 290. Such a review procedure has been set up to lead to a final secretarial decision and trigger the ninety-day statutory judicial review procedure set forth in 30 U.S.C. § 226–2.

 30 U.S.C. § 226–2 refers to "contesting a decision of the Secretary involving any oil and gas lease." The Court finds that the imposition of the drilling restriction at bar falls within that language. The courts have treated this limitation on review very strictly and have indicated that judicial review of a final secretarial decision dealing with an oil or gas lease must be brought within ninety days of the decision or final disposition of an administrative appeal or be barred as untimely. *King v. Udall,* 266 F.Supp. 747 (D.C.D.C.1967).

The Secretary's power to promulgate rules setting time limits for administrative review so that the statute of limitations may run has also been upheld. *Tallman v. Udall,* 116 U.S.App.D.C. 379, 324 F.2d 411 (1963), *rev'd on other grounds,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1969).

In accordance with the above, plaintiff's motion for summary judgment is denied, defendants' motion for summary judgment is granted, and the case is dismissed. An appropriate order is entered herewith.

---

4. "It is agreed that the rate of prospecting and developing and the quality and rate of production from the lands covered by this lease shall be subject to control in the public interest by the Secretary of the Interior, and in the exercise of his judgment the Secretary may take into consideration, among other things, Federal laws, State laws, and Regulations issued thereunder . . . ."