**CAPITAL SAVINGS & LOAN ASSOCIATION (Successor by Reorganization to Franklin Savings & Loan Association)**

v.

**The UNITED STATES.**

**No. 552–76.**

United States Court of Claims.

Oct. 17, 1979.

Harlan Pomeroy, Cleveland, Ohio, for plaintiff. Baker & Hostetler, Cleveland, Ohio, of counsel.

M. Carl Ferguson, Asst. Atty. Gen., Washington, D. C., for defendant. Theodore D. Peyser, Jr. and Donald H. Olson, Washington, D. C., of counsel.

Before NICHOLS, BENNETT, and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

EDWARD S. SMITH, Judge:

Plaintiff, Capital Savings and Loan Association (Capital), as successor in interest to Franklin Savings and Loan Association (Franklin), seeks in this suit a refund of federal income taxes in the amount of $603,137, plus interest thereon, paid with respect to Franklin's final short year, July 1 through November 30, 1975. Capital paid this amount after its acquisition, pursuant to a statutory merger, of Franklin's assets and the assumption of Franklin's liabilities. The question presented is whether the statutory merger of Franklin, which prior to

the merger, had a limited amount of par value guaranty stock outstanding in addition to savings accounts, into Capital, whose capital consists solely of savings accounts, qualifies as a reorganization under section 368(a)(1)(A) of the Internal Revenue Code of 1954.[1]

Section 61(a)(3) of the Internal Revenue Code (code) includes in gross income all "[g]ains derived from dealings in property" unless "otherwise provided."

Section 361 of the code provides that:

No gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization.

In order for a transaction to be a "reorganization" for purposes of the code provisions involved herein, it must qualify under at least one of the definitions contained in code section 368(a)(1), one of which, subsection (A), is "a statutory merger or consolidation." The parties do not dispute the facts that on November 30, 1975, Franklin was merged into Capital pursuant to an "Agreement of Merger," dated June 26, 1975, or that there exists a continuity of the business enterprises of both corporations. Such merger was effected under the laws of the State of Washington. Also, the parties are in agreement that, despite the literal requirements of the code, the nonrecognition benefits to plaintiff, contained in code sections 361 and 381,[2] are not available unless the "reorganization" involves "a continuance of interest on the part of the transferor in the properties transferred." *Cortland Specialty Co. v. Commissioner*, 60 F.2d 937, 940 (2d Cir. 1932), *cert. denied*, 288 U.S. 599, 53 S.Ct. 316, 77 L.Ed. 975 (1933). The dispute is over the adequacy of the "interest in the affairs" of Capital which was acquired by the shareholders of Franklin. *Pinellas Ice & Cold Storage Co. v. Commissioner*, 287 U.S. 462, 470, 53 S.Ct. 20, 77 L.Ed. 510 (1933).

If the statutory merger of Franklin and Capital qualifies as a reorganization under section 368(a)(1)(A) (commonly referred to as an "A" reorganization), Capital, the surviving corporation, will succeed to Franklin's bad debt reserves, accrual items, and investment credits. I.R.C. §§ 381(c)(4) and 381(c)(23). If not, the balance of Franklin's bad debt reserves must be included in Franklin's gross income for the last (short) year of its existence to the extent its additions to its reserve for bad debts resulted in tax benefits for prior years. *West Seattle National Bank v. Commissioner*, 33 T.C. 341 (1959), *aff'd*, 288 F.2d 47 (9th Cir. 1961); *Arcadia Savings & Loan Ass'n v. Commissioner*, 300 F.2d 247 (9th Cir. 1962). The Internal Revenue Service has taken the position in Rev.Rul. 69–6, 1969–1 C.B. 104, and, in this suit, that the merger of a savings and loan association with outstanding guaranty stock into a mutual savings and loan association without such stock does not meet the requirements of the continuity of interest test.

Though the resolution of the issue presented has been difficult, as both parties have made compelling arguments, both written and oral, we hold that the merger qualifies as a reorganization under section 368(a)(1)(A).

## I.

The facts are undisputed and both parties have moved for summary judgment. Pursuant to a merger agreement approved by the Washington State Supervisor of Savings and Loan Associations, Franklin merged with plaintiff on November 30, 1975. Plaintiff was the surviving corporation.

Prior to the merger, Franklin, a Washington corporation, had a capital structure consisting of savings accounts and $10 par

---

**1.** 26 U.S.C. § 368(a)(1)(A). Plaintiff alleges that the transaction also qualifies as a reorganization under I.R.C. § 368(a)(1)(C). Because of our holding, *infra*, we do not find it necessary to reach that question.

**2.** Benefits to the shareholders are also provided by I.R.C. § 354.

value guaranty stock. A minimum amount of guaranty stock, specified by a formula, had to be maintained. If the amount of guaranty stock fell below the minimum, Franklin's articles of incorporation prohibited the payment thereon of cash dividends exceeding the lowest rate paid on withdrawable share accounts. Each Franklin savings account holder received one vote for each $100 in his or her account. Its guaranty stockholders received one vote per share of stock. Borrowers received one vote. Under state law, Franklin's shareholders had a proportionate proprietary interest in Franklin's net assets and earnings which was subordinate to the claims of creditors, but its account holders did not. Wash.Rev. Code Ann. § 33.48.080.[3] The guaranty stock could not be withdrawn until all the claims of creditors and other members had been satisfied. Dividends could not be declared on the guaranty stock unless specified reserves equaled 5 percent of savings and, during the period dividends were to be declared, dividends were also declared and paid on the withdrawable savings accounts.

Capital, a mutual savings and loan association, has withdrawable savings accounts, but it does not have stock. Unlike Franklin's former holders of savings accounts, its account holders are entitled under state law to share proportionately in assets of the association upon liquidation after the claims of the association's creditors have been satisfied. Wash.Rev.Code Ann. § 33.20.010. Borrowers receive one vote, but they do not have a proprietary interest in the association. A savings account holder receives one vote for each $100 in his or her account. Its holders of savings accounts and borrowers are entitled to vote, by proxy if they so desire, on all matters requiring the action of its members, to elect the directors of the association and to amend the association's bylaws and articles of incorporation. Nor-

mally, withdrawals from Capital accounts are honored upon request. The deferment of payment of requested withdrawals is authorized by statute; however, this authority is rarely exercised. State law prohibits the payment of a fixed dividend rate. Wash. Rev.Code Ann. § 33.20.150.

All savings accounts and guaranty stock held by Franklin's members were converted into voting, withdrawable savings accounts in Capital on the date of the merger. The savings accounts were carried over at face value. Capital issued to the holders of Franklin guaranty stock withdrawable accounts in the amount of $56.36 per share of $10 par value guaranty stock. Though the bases of the stock are unknown, it is presumed that the sum of $56.36 included the equity value of each share of guaranty stock. Capital assumed all of Franklin's assets, properties, debts, and liabilities.

As successor in interest to Franklin, plaintiff filed Franklin's federal income tax return for the short year, July 1 through November 30, 1975. On April 6, 1976, plaintiff filed a timely refund claim in the amount of $603,137, plus interest, and filed this suit on December 23, 1976. This court has jurisdiction under 28 U.S.C. §§ 1346 and 1491 (1976).

## II.

■ The continuity of interest test, requiring the owners of Franklin to receive a proprietary interest in the modified corporation, fleshes out the general statutory definitions of reorganization which include mergers, consolidations, recapitalizations, corporate acquisitions of another corporation's stock or assets, and changes in the corporate identity, form, or place of organization. According to the literal language of section 368, every transaction which falls within the express language of that section, without regard to the continuity of interest

---

**3.** Wash.Rev.Code Ann. § 33.48.080 (Supp.1978) provides:

"33.48.080 Members proprietary interest— Creditors priority

"Each member having guaranty stock in an association shall have a proportionate proprietary interest in its assets and net earnings sub-

ordinate to the claims of its creditors with priorities as established by this chapter 33.48 RCW; but no other member as defined in RCW 33.48.010 shall have any such interest except as provided in RCW 33.48.120 as now or hereafter amended."

test, would allow many transactions which are sales for all practical purposes to escape taxation. *Helvering v. Minnesota Tea Co.*, 296 U.S. 378, 56 S.Ct. 107, 80 L.Ed. 397 (1935); *LeTulle v. Scofield*, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 (1940). In order to distinguish sales from true reorganizations where the "new property is substantially a continuation of the old investment still unliquidated" (Treas.Reg. § 1.1002–1(c) (1957)), the courts apply the continuity of interest doctrine so as "to protect the 'spirit' of the legislation against its 'letter' by segregating 'sales' and disguised 'dividends' from true reorganizations." [4] B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, ¶ 14.03 at 14–11 (4th ed. 1979). This transaction will not qualify as an "A" reorganization unless the consideration given in exchange for Franklin guaranty stock is viewed as "stock or securities" in Capital.

The Government argues that holders of the guaranty stock of Franklin, in fact, "cashed in" or sold their equity interest in Franklin when they accepted $56.36 in a Capital savings account for each $10 par value share of guaranty stock. The Government's stance is that "a savings and loan account is the equivalent of cash," the receipt of which violates the continuity of interest doctrine, which has been described as follows:

> \* \* \* [There must be] a showing: (1) that the transferor corporation or its shareholders retained a substantial proprietary stake in the enterprise represented by a material interest in the affairs of the transferee corporation, and, (2) that such retained interest represents a substantial part of the value of the property transferred. [Footnote omitted. *South-*

*west Natural Gas Co. v. Commissioner*, 189 F.2d 332, 334 (5th Cir.), *cert. denied*, 342 U.S. 860, 72 S.Ct. 88, 96 L.Ed. 647 (1951).]

While admitting that the Capital savings account does have some indicia of ownership, *i. e.*, voting rights and the right to share in the corporation's assets upon liquidation, the Government states that the right to withdraw at will, in most circumstances, cash from the savings accounts in Capital, characterized the relationship of a former Franklin shareholder to Capital as that of a creditor to a debtor. This argument we must reject for the following reasons.

■ There are several problems with the argument that savings accounts in mutual savings and loan associations should be viewed as debt interests, beginning with the fact that these accounts are hybrid interests having the seemingly inapposite characteristics of both equity interests and debt interests. *West Side Federal Savings & Loan Ass'n v. United States*, 494 F.2d 404, 409 (6th Cir. 1974) (*West Side*); *Home Savings & Loan Ass'n v. United States*, 514 F.2d 1199, 1209 n.17 (9th Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 386 (1975); *Everett v. United States*, 448 F.2d 357, 360 (10th Cir. 1971). The Government has admitted in other circumstances that savings accounts have indicia of equity interests and that holders of these accounts are shareholders within the purview of the reorganization provisions.

In Rev.Rul. 69–3, 1969–1 C.B. 103, the acquisition of the assets of a mutual savings and loan association by a similar association was viewed as a qualifying reorganization where passbooks of identical cash deposits are issued by the acquiring association to

---

4. Treas.Reg. § 1.368–1(b) (1955) provides as follows:

"(b) *Purpose.* Under the general rule, upon the exchange of property, gain or loss must be accounted for if the new property differs in a material particular, either in kind or in extent, from the old property. The purpose of the reorganization provisions of the Code is to except from the general rule certain specifically described exchanges incident to such readjustments of corporate structures made in one of

the particular ways specified in the Code, as are required by business exigencies and which effect only a readjustment of continuing interest in property under modified corporate forms. Requisite to a reorganization under the Code are a continuity of the business enterprise under the modified corporate form, and \* \* \* a continuity of interest therein on the part of those persons who, directly or indirectly, were the owners of the enterprise prior to the reorganization. \* \* \* "

the share account holders of the acquired association. In this ruling, the Government took the position that the savings accounts represented by passbooks were equity interests because the holder had a right to vote and the right to share in the assets upon liquidation.[5]

In Rev.Rul. 78–286, 1978–31 I.R.B. 7, the facts were in all material respects identical to those in Rev.Rul. 69–3, *supra*, except that the merger occurred in a state where holders of savings accounts were prohibited from having voting rights by state law. The Service found that the continuity of proprietary interest was satisfied even in the absence of voting rights and that the holders of deposits in mutual savings banks were, in this situation at least, considered to be the shareholders of the association because they were the only persons entitled by law to participate in the earnings upon liquidation.

In addition to the Government's recognition in the circumstances described above, that account holders in mutual savings and loan associations are shareholders and that savings accounts are equity and proprietary interests in the reorganization arena, there are other instances where it has been recognized that equity interests are attached to savings accounts in mutual savings and loan associations.

In *Wisconsin Bankers Ass'n v. Robertson*, 111 U.S.App.D.C. 25, 294 F.2d 714 (D.C. Cir.), *cert. denied*, 368 U.S. 938, 82 S.Ct. 381, 7 L.Ed. 338 (1961), the court held that challenged regulations promulgated by the Federal Home Loan Bank Board did not unlawfully permit federal savings and loan associations to accept deposits and, therefore, illegally engage in the banking business. Then Circuit Judge Burger noted that in spite of the "superficial similarities" of associations to banks, the "legal realities" indicated that savings accounts in federal savings and loan associations had investment characteristics, the right to vote and to elect the management of the association, which distinguished them from deposits in banks which represent a debtor-creditor relationship. 294 F.2d at 717–18. The same equity characteristics noted in *Wisconsin Bankers Ass'n* are attached to Capital savings accounts. In *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), the equity characteristics of a withdrawable savings account in an Illinois savings and loan association (which characteristics led the Supreme Court to hold that the holders of savings accounts were entitled to the investor protection of the Securities Exchange Act of 1934) are present in the Capital accounts. Account holders in *Tcherepnin*, like the account holders in Capital, receive dividends only if the association makes a profit and only in proportion to the amount of each holder's investment. *See also Fahey v. Mallonee*, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (members of federal savings and loan associations are shareholders who can bring shareholders' derivative suits); *Fidelity Savings & Loan Ass'n v. Burnet*, 62 App.D.C. 131, 65 F.2d 477 (D.C. Cir.), *cert. denied*, 290 U.S. 652, 54 S.Ct. 69, 78 L.Ed. 565 (1933) (dividends, not interest, are paid to members of state savings and loan associations).

On balance, we cannot say that the debt characteristics of the Capital savings accounts outweigh their equity features or that the debt characteristics are controlling for federal income tax purposes. Capital savings accounts have all the indicia of stock, *i. e.*, voting rights, proprietary interests granted by state law, the right to receive dividends which cannot be set at a

---

5. The statutory definitions of stock and shareholders, which definitions are applicable to the reorganization provisions of the code unless they are "manifestly incompatible with the intent" of the reorganization provisions, include within their express language the holders of Capital accounts and their share accounts.

"§ 7701. * * *

"(a) * * *

"(7) Stock.—

"The *term 'stock' includes shares in an association*, joint-stock company, or insurance company.

"(8) Shareholder.—

"The *term 'shareholder' includes a member in an association*, joint-stock company, or insurance company." (Emphasis supplied.) 26 U.S.C. § 7701(a)(7)–(8) (1976).

fixed rate under state law, and the right to share, subordinate to the claims of the association's creditors, proportionately in the association's assets upon liquidation.[6] Our decision that the Capital savings accounts are stock or securities for the purposes of the reorganization provisions of the code is compelled by the plain fact that the Capital savings accounts are the *only* interests with proprietary and equity rights which the Franklin shareholders could have received in exchange for their stock, and by the fact that Capital is *owned* by its account holders. Under these circumstances, to rule that the Franklin shareholders did not exchange their former ownership interest in Franklin for an ownership interest in Capital and did not continue their equity investment in the changed association would be tantamount to stating that Capital is an association without owners or persons having a proprietary interest in the association. As the law assumes that someone must own an association or corporation,[7] we join the courts in *West Side, supra,* and *Everett, supra,* in refusing to reach a decision which illogically implies that Capital is an association without owners and which may unduly hinder otherwise desirable reorganizations. Though savings accounts are easily converted into cash, as long as the account remains unliquidated, its holders continue their equity investment in the association in the form of share accounts. Moreover, it must be observed that the Government has admitted that Capital, a mutual association, is owned by its account holders, and this fact is inconsistent with its argument that these same accounts are debts if held by former holders of Franklin stock. The nature of the Capital accounts, *i. e.*, the property interests in question, whether debt or equity, does not depend upon whether their holders were, prior to the acquisition by Capital of Franklin's assets, either holders of Franklin guaranty stock or holders of Capital savings accounts. Further, the debt or equity nature of savings accounts does not turn upon whether the accounts are exchanged in the merger of a mutual association into a mutual association or in the merger of a stock association into a mutual association. Our inquiry must be into the nature of the proprietary interest in the affairs of Capital, if any, which rests in the holders of its accounts.

■ Our view that the merger of Franklin and Capital was an "A" reorganization is not changed by the Washington State court's decision holding that members of mutual savings and loan associations do not have the right to inspect the association's books and records. *State ex rel. Wicks v. Puget Sound Savings & Loan Ass'n,* 8 Wash.2d 599, 113 P.2d 70 (1941). "Inspection of that nature [of the association's books and records], however, is not a right which universally attaches to corporate shares." *Tcherepnin v. Knight, supra,* 389 U.S. at 344, 88 S.Ct. at 557. The decisions of the Washington Supreme Court in *State ex rel. Graham v. City of Olympia,* 80

---

**6.** "* * * Ordinarily, a share of 'stock' embodies the permanent proprietary ownership or equity interest in a corporation which entitles the holder to (a) share proportionately in the profits of the business; (b) vote on matters affecting the corporate enterprise; and (c) share ratably in the assets of the venture (after payment of debts) on liquidation. * * *" B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, ¶ 14.31 at 14–94 and 14–95 (4th ed. 1979).

**7.** This observation was shared by the court in *Home Sav. & Loan Ass'n v. United States,* 514 F.2d 1199, 1208 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 386 (1975):

"* * * We express no opinion on this assertion beyond recognizing that the presence of such more extensive rights can approach the point at which all difference between such shares and so-called permanent shares or guarantee stock disappears. In such cases debt and equity become indistinguishable. Moreover, we also recognize that the statutory merger of two associations whose debt and equity are indistinguishable, as perhaps in the case of two mutual savings associations, raises issues different from those before us here. Under such circumstances a spectrum of interests may vanish leaving only one broad and uniform band to depict the only interest that can exist. Assuming that there must exist in all associations a proprietary interest, such broad and uniform interest may well serve that purpose. Its capacity to do so should not be impaired by the fact that it also may constitute debt. * * * [Footnote omitted.]"

Wash.2d 672, 497 P.2d 924 (1972), and in *Rummens v. Home Savings & Loan Ass'n,* 182 Wash. 539, 47 P.2d 845 (1935), viewing the debt characteristics of savings accounts as the controlling feature in entirely different contexts were factors considered in our analysis, but they are not controlling. *Home Savings & Loan Ass'n, supra,* 514 F.2d at 1206. The characterization of the accounts as debt or equity for federal income tax purposes is not controlled by state law since the reorganization provisions of the code are not, expressly or by necessary implication, dependent upon state court decisions. *Isaacson, Rosenbaum, Spiegleman & Friedman, P.C. v. United States,* Ct.Cl., No. 4–79 (order, July 9, 1979), citing *Burnet v. Harmel,* 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199 (1932). Similarly, the ability of the Capital account holders to withdraw their investment from their accounts practically at will, inasmuch as the restrictions permitted under state law are rarely invoked, does not require a finding that Capital accounts are debt interests. The focus must be on the nature of the interest itself; the duration of the interest does not control the determination of whether an interest is debt or equity.[8] *Berner v. United States,* 282 F.2d 720, 724, 151 Ct.Cl. 128, 136 (1960), citing *LeTulle v. Scofield,* 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 (1940). As long as the Capital account holders do not withdraw, they continue to hold their proprietary interests in the corporation. At such time as they do withdraw funds, then and then only will their proprietary interest, to the extent of their withdrawal, be eliminated, or, as characterized by defendant, be "cashed in."

The Government's contention that there occurred an impermissible substantial change in the relationship of the Franklin shareholders because the value of the equity received is insignificant when compared to the value of the equity surrendered is likewise rejected. Changes in the relationship of the former Franklin shareholder to the assets conveyed to Capital during the merger are permissible so long as the Franklin shareholder substantially continued his ownership interest in Capital. *See Helvering v. Minnesota Tea Co.,* 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284 (1935), and *Miller v. Commissioner,* 84 F.2d 415 (6th Cir. 1936). This is not a case where an impermissible amount of boot and other securities was given in addition to stock as consideration for the exchange. In the transaction before the court, the only consideration which Capital could give or which the Franklin shareholders could receive, Capital savings accounts, are proprietary interests and in fact are the only proprietary interests in Capital. *Cf. Southwest Natural Gas Co. v. Commissioner,* 189 F.2d 332 (5th Cir.), *cert. denied,* 342 U.S. 860, 72 S.Ct. 88, 96 L.Ed. 647 (1951) (reorganization treatment denied where less than 1 percent of the consideration received was equity); *Kass v. Commissioner,* 60 T.C. 218 (1973) (reorganization treatment denied where only 16 percent of the consideration received was equity).

We are aware that one of the ramifications of our decision is that Franklin stockholders will not have their gain, if any, recognized until they withdraw sums from their Capital accounts and that, as a result, the Service may be faced with possible cumbersome accounting and collecting problems. However, ease of collection is not a criterion of taxability which courts should apply. Potential accounting and col-

---

8. "* * * It seems to be generally accepted that shareholders of the transferor are relatively free to sell part or all of the stock received by them in the exchange if they are under no binding obligation to do so, without fear of breaking the reorganization, although it may be arguable that a preconceived plan for such a sale would be fatal even without a formal commitment. B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, ¶ 14.11 at 14–25 (4th ed. 1979).

*See also Stephens, Inc. v. United States,* 464 F.2d 53 (8th Cir. 1972), *cert. denied,* 409 U.S. 1118, 93 S.Ct. 911, 34 L.Ed.2d 702 (1973), holding that the taxpayer who was required by a preexisting plan to divest itself of shares in the new corporation did not possess the requisite legal and equitable ownership interest for the purposes of the reorganization provisions of the Internal Revenue Code.

lecting difficulties do not warrant our disregarding the substance of a transaction, an equity for equity exchange, and denying reorganization treatment when appropriate.

Defendant's motion for summary judgment is denied; plaintiff's cross-motion for summary judgment is granted; and the case is remanded to the trial division for a determination of the amount of recovery, pursuant to Rule 131(c).

Samuel F. Schwag, Rapid City, S. D., attorney of record, for plaintiff.

Lynn J. Bush, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and SMITH, Judges.