**Anna M. EVERETT et al., Appellees,**

**v.**

**UNITED STATES of America,
Appellant.**

**No. 313–70.**

United States Court of Appeals,
Tenth Circuit.

Sept. 13, 1971.

**358**

Gerald W. Dykes, Kansas City, Kan., (Ervin G. Johnston and Weeks, Thomas, Lysaught, Bingham & Johnston, Kansas City, Kan., of counsel, on the brief), for appellees.

Daniel B. Rosenbaum, Atty., Department of Justice (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Harry Baum, Attys., Department of Justice, and Robert J. Roth, U. S. Atty., of counsel, on the brief), for appellant.

Before CLARK*, Associate Justice, and HILL and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a tax refund case. Specifically, plaintiffs, who · were transferee shareholders of Bonner Springs Building and Loan Association (Bonner), made claim in the United States District Court for the State of Kansas to recover $20,362.82, which sum, according to the complaint, was erroneously and illegally assessed against and collected from the plaintiffs as income tax owed by Bonner for the calendar year 1962. After the Government filed its answer, both parties filed motions for summary judgment, each alleging that under the pleadings and the elaborate pretrial order there existed no genuine issue as to any material fact. Upon hearing; the trial court granted the plaintiffs' motion and entered judgment in their favor. The Government now appeals. We affirm.

Both the plaintiffs and the Government agree that the broad issue to be resolved is whether the trial court erred in its determination that the transfer by a state chartered building and loan association of its assets and liabilities to a federal savings and loan association constituted a so-called tax-free "reorganization" as defined in § 368(a) (1) (C) and (2) (B) of the Internal Revenue Code of 1954, and that Bonner was therefor not required to restore the balance in its bad debt reserve to gross income for its final taxable year, i. e., 1962. The parties generally agree further that resolution of this broad question turns on the disposition of two corollary issues: (1) Did the trial court err in holding that the full paid shares and savings shares of the federally chartered savings and loan association constituted "voting stock" within the meaning of the aforesaid § 368(a) (1) (C) and (2) (B); and (2) did the trial court err in its further holding that the transaction under consideration satisfied the "continuity of interest" requirement for a "C" type reorganization?

The Bonner Springs Building and Loan Association was a state chartered building and loan association with the several plaintiffs being the permanent shareholders therein. Bonner was organized under Kansas statutes which authorized permanent shares in a building and loan association in addition to full paid shares and savings shares. On August 23, 1962, pursuant to prior approv-

---

* Associate Justice Retired, United States Supreme Court, sitting by designation.

al of its directors and shareholders, Bonner entered into an agreement with Inter-State Federal Savings and Loan Association (Inter-State), a savings and loan association chartered under 12 U.S.C. § 1461 et seq., whereby Inter-State acquired all the assets of Bonner under the following conditions: (1) Borrowing members of Bonner became borrowing members of Inter-State; (2) holders of full paid shares and savings shares in Bonner received for their shares like shares in Inter-State equal in value to the full participation value of their shares in Bonner; (3) Inter-State paid Bonner the sum of $65,000 in cash; and (4) Inter-State assumed all liabilities of Bonner, excluding any federal or state tax liability arising in connection with the transaction.

After the aforesaid agreement was executed on August 27, 1962, Inter-State continued to carry on the business theretofore carried on by Bonner at the same location. Thereafter Bonner was liquidated and dissolved, with the $65,000 received by Bonner from Inter-State being distributed to the several plaintiffs, who as indicated were the permanent shareholders of Bonner.

It is noted that the holders of full paid shares and savings shares in Bonner comprised over 97% of the voting shares in Bonner and that their holdings constituted about 83% of the fair market value of Bonner's assets. As above mentioned, these holders received for their shares in Bonner like shares in Inter-State to the full participation value of their shares in Bonner.

■ The initial question is whether the full paid shares and savings shares of Inter-State constitute "voting stock" of Inter-State within the meaning of § 368(a) (1) (C) and (2) (B) of the Internal Revenue Code of 1954. The answer to this question depends upon the nature of the interest represented by the said full paid shares and savings shares of Inter-State. The Government concedes that a savings account in a federal savings and loan association may well

possess some of the proprietary characteristics of a typical "stock," i. e., the right to vote, share in liquidation proceeds, and the like, but asserts that such interest more nearly represents that of a creditor than a true proprietary interest and hence cannot be said to constitute "solely voting stock." In suggesting that the voting stock of the acquiring corporation must be "solely" voting stock, i. e., a permanent equity risk investment, and nothing else, counsel is in error. The applicable statute, as applied to the instant case, only requires that at least 80% of the fair market value of all the assets of Bonner be acquired *solely for* voting stock of Inter-State, with the latter giving no other consideration for the 80% interest. The adverb "solely" does not impose a qualitative restriction on the nature of the stock thus given by the acquiring corporation. So, the question as to whether the full paid shares and savings shares of Inter-State constitute "voting stock" of Inter-State is not answered by the argument that such is not "solely" voting stock.

■ The Internal Revenue Code of 1954, § 7701(a) (7), provides that the term "stock" includes "shares in an association." Beyond this definition, the Internal Revenue Code and the Treasury Regulations issued thereunder are silent. In this circumstance, it has been held that the term "stock" is to be given its ordinary meaning. *See* Carlberg v. United States, 281 F.2d 507 (8th Cir.), where it was held that a "certificate of contingent interest" constituted "stock" within the meaning of § 354(a) of the Internal Revenue Code of 1954. The trial court in its memorandum and order concluded that the full paid shares and savings shares of Inter-State did constitute "voting stock" of Inter-State and thereby met the requirement of the statute to the end that Bonner was not required to include in its gross income for its last taxable year its bad debt reserve. In thus holding the trial court relied, in part, on the general reasoning of Home Savings & Loan Association v. United

**360**

States, 223 F.Supp. 134 (S.D.Cal.). It was therein stated, among other things, that "[t]he controlling factor is not the label of the depositor-shareholder's interest but the quality of rights, preferences and privileges relating to such interest." We agree. Granted that such shares have some of the indicia of a creditor-debtor relationship, nevertheless at the same time such shares also possess many of the attributes of a proprietary type interest, such as right to vote and thereby participate in management, so-called bonus payments (in addition to interest) contingent on the association's earnings, shareholders' right to share in liquidation proceeds, and the like. Accordingly, we uphold the determination of the trial court on this phase of the dispute.

The trial court further determined that the transaction under consideration satisfied the continuity of interest requirement as mentioned in 12 C.F.R. § 1.368–1(b) (1971). As indicated, upon the consummation of this transaction, Inter-State carried on the savings and loan business theretofore carried on by Bonner at the same location. Also, as indicated, over 80% of the assets of Bonner was acquired solely for voting stock of Inter-State, and nothing else. The fact that permanent shareholders of Bonner who represented a small proportion of the voting rights in Bonner did not acquire any interest in Inter-State is not decisive. Inter-State being a federally chartered savings and loan association did not have in its corporate structure any so-called permanent shares. The continuity of interest test does not require that *all* of the proprietary owners of Bonner, for example, become and remain as proprietary owners of Inter-State. We think the reasoning of Miller v. Commissioner, (6th Cir.) 84 F.2d 415 at 418–419, is appropriate on this point in view of § 368(a) (2) (B) of the Internal Revenue Code of 1954. We agree that under the circumstances, i. e., where the holders of full paid shares and savings shares of Bonner received voting stock in Inter-State having a face value of over 80% of Bonner's assets, the continuity of interest test was fully met.

This then being a "C" type reorganization, and not a mere sale of assets by Bonner to Inter-State, under the applicable statutes Bonner, as the transferor corporation, is not required to restore the balance in its bad debt reserve to gross income for its final taxable year.

Judgment affirmed.