**WEST SIDE FEDERAL SAVINGS AND LOAN ASSOCIATION OF FAIRVIEW PARK, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 73–1718.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1974.

Decided March 29, 1974.

---

3. Such a decision renders it unnecessary to consider appellee's res judicata argument.

Charles E. Anderson, Dept. of Justice, for defendant-appellant; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief; Frederick M. Coleman, U. S. Atty., of counsel.

Harlan Pomeroy, Cleveland, Ohio, for plaintiff-appellee; James H. Rice, Baker, Hostetler & Patterson, Cleveland, Ohio, on brief.

Before WEICK and LIVELY, Circuit Judges, and ROSENSTEIN, Customs Judge.*

LIVELY, Circuit Judge.

This income tax refund case was decided in favor of the plaintiff West Side Federal Savings and Loan Association of Fairview Park (West Side) on cross-motions for summary judgment. There is no actual dispute in the facts, though the parties each emphasized different facts in their presentations to the court. The issue is whether a statutory merger of an Ohio state-chartered savings and loan association, with a limited amount of par value capital stock outstanding in addition to savings accounts, into a mutually owned federal savings and loan association whose capital consists solely of savings accounts, constituted a tax-free reorganization within the meaning of § 368(a)(1)(A) of the Internal Revenue Code of 1954. The district court held that a tax-free reorganization was effected and we affirm.

* The Honorable Samuel M. Rosenstein, Senior Judge, United States Customs Court, sitting by designation.

The following facts are taken from the briefs of the appellant:

Taxpayer (West Side) is a federal savings and loan association, chartered by the Federal Home Loan Bank Board under Section 5 of the Home Owners' Loan Act of 1933, as amended. Its current charter (Charter K, Rev.) was issued by the Board on February 27, 1956.

Under Charter K, taxpayer may raise its capital by accepting payments on an unlimited number of savings accounts. It may not, however, issue capital stock. All holders of savings accounts, and all borrowers of funds from taxpayer, are members and are entitled to vote on questions requiring the action of association members. A savings account holder is entitled to one vote for every $100 in his account, but may not cast more than 50 votes, in any event. Savings account holders are entitled to be paid the face value of their accounts within 30 days after a request has been filed with the association.

Parma Savings Company was a corporation organized and existing under the laws of the State of Ohio, with a limited amount of $200 par value capital stock authorized, issued, and outstanding, in addition to savings accounts. The permanent capital stock of Parma could not be redeemed until all other liabilities of the company were fully liquidated upon final dissolution of the company.

On April 12, 1967, taxpayer and Parma entered into an agreement labelled "Agreement and Plan of Merger," wherein a plan for the contemplated merger of Parma into taxpayer was set out. Under the plan, taxpayer was to acquire all of the assets and succeed to all of the liabilities of Parma. In addition, each holder of a savings account in Parma was to receive a savings account in taxpayer of equal withdrawal value. Each outstanding share of Parma capital stock, with a par value of $200, was to be converted into a savings account in taxpayer with a withdrawal value of $2,500. After adoption by Parma's board of directors and stockholders and by taxpayer's board of directors, and approval by the Federal Home Loan Bank Board and the Superintendent of Building and Loan Associations of Ohio, the plan was effectuated on September 30, 1967.

Although the Internal Revenue Service recognized the transaction between West Side and Parma to be a statutory merger within the literal language of § 368(a)(1)(A), it concluded that the additional requirement of a "continuity of proprietary interest" was not met. This determination was based on the government's position that when the Parma shareholders exchanged their $200 par value stock for savings accounts in West Side at the rate of $2,500 withdrawal value for each share of stock given up they converted their equity interest in Parma into cash or its equivalent. A deficiency for the year 1967 was asserted against West Side as transferee of Parma since Parma would have been required to restore to income in the year of the merger its bad debt reserve and excess investment credits if the merger were not properly treated as a tax-free reorganization. The tax was paid, a claim for refund filed and not allowed, and this suit followed.

The "continuity of proprietary interest" requirement for treatment of an otherwise valid statutory merger or consolidation under § 368(a)(1)(A) is a judicially created standard which is now promulgated in Treasury Regulations § 1.368-1(b). [The statutory provisions referred to herein and in the Regulations are set out in the Appendix of this opinion.] In Cortland Specialty Co. v. Commissioner of Internal Revenue, 60 F.2d 937 (2d Cir. 1932), a transaction involving the transfer of assets of one corporation to another corporation in exchange for cash and short-term notes was held not to be a reorganization within § 203 of the Revenue Act of 1926. Section 203(h)(1)(A) of the

1926 Act defined reorganization exactly as it is defined in § 368(a)(1)(A) of the Internal Revenue Code of 1954. The court found that a continuance of interest in the properties transferred by the transferor was an assumed condition of each transaction which qualified as a tax-free reorganization, stating that—

In defining "reorganization," section 203 of the Revenue Act gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. 60 F.2d at 940.

The Supreme Court of the United States adopted this construction in Pinellas Ice Co. v. Commissioner of Internal Revenue, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428 (1933), where the *Cortland* decision was cited with approval. In that case a corporation acquired substantially all of the property of two other corporations in exchange for cash and short-term notes. The Court held that the secured notes given for the deferred purchase price were not securities and were properly regarded as the equivalent of cash, saying—"Certainly, we think that to be within the exemption the seller must acquire an interest in the affairs of the purchasing company more definite than that incident to ownership of its short-term purchase-money notes." 287 U.S. at 470, 53 S.Ct. at 260. The Court also found that the terms, "merger and consolidation" as used in the Act have a broader meaning than that ordinarily given to them and that transactions which might not traditionally be classified as mergers or consolidations may qualify under the Act.

In a series of opinions issued in 1935 the Supreme Court further defined the continuity of interest requirement by its treatment of various factual situations. In Nelson Co. v. Helvering, 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281 (1935), a transaction was held to qualify as a tax-free reorganization where substan-

tially all of a corporation's property was acquired by a new corporation formed for this purpose in exchange for $2,000,000 in cash and the entire issue of a new non-voting preferred stock of the acquiring corporation. Part of the cash and all of the preferred stock of the new corporation eventually went to the stockholders of the acquired corporation. Noting that the mere acquisition of the assets by one corporation of those of another is not a reorganization the Court stated:

But where, as here, the seller acquires a definite and substantial interest in the affairs of the purchasing corporation a wholly different situation arises. The owner of preferred stock is not without substantial interest in the affairs of the issuing corporation, although denied voting rights. The statute does not require participation in the management of the purchaser; nor does it demand that the conveying corporation be dissolved. 296 U.S. at 377, 56 S.Ct. at 274.

Issued on the same day as *Nelson* was the opinion in Helvering v. Minnesota Tea Co., 296 U.S. 378, 56 S.Ct. 269, 80 L.Ed. 284 (1935). There the stockholders of the acquired corporation ended up, after the reorganization and exchange, with the capital stock of one of the acquiring corporations. The remaining assets of the acquired corporation were exchanged for voting trust certificates in a second acquiring corporation plus cash. The acquired corporation retained the certificates and distributed the cash among its shareholders. This was held to qualify as a tax-free reorganization. The Court stated that the interest which the seller acquired in the affairs of the purchaser "must be definite and material; it must represent a substantial part of the value of the thing transferred." 296 U.S. at 385, 56 S.Ct. at 272. Significantly, the Court went on to say, "True it is that the relationship of the taxpayer to the assets conveyed was substantially changed, but this is not inhibited by the statute." 296 U.S. at 386, 56 S.Ct at

272. The same result was reached in Helvering v. Watts, 296 U.S. 387, 56 S. Ct. 275, 80 L.Ed. 289 (1935), also decided the same date. In that case the stockholders of one corporation exchanged all of its stock for shares of another corporation and bonds of the acquired corporation guaranteed by the acquiring corporation. The acquired corporation continued to conduct business until dissolved four years later. The Internal Revenue Service took the position that the exchange of stock for bonds resulted in substantial change of position by the stockholders of the acquired corporation and that the transaction failed as a tax-free reorganization. The Court held that the bonds were securities and could not be regarded as a cash equivalent as the short-term notes were in Pinellas Ice Co. v. Commissioner of Internal Revenue, *supra*. Thus, where shareholders of the acquired corporation received stock in the acquiring corporation the fact that they also received bonds did not disqualify the transaction.

The Supreme Court treatment of the continuity of interest requirement continued in Le Tulle v. Scofield, 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 (1940), where the assets of one corporation were transferred to another in exchange for cash and bonds payable over a period of eleven years. The Court held that this was not a tax-free reorganization.

> Where the consideration is wholly in the transferee's bonds, or part cash and part such bonds, we think it cannot be said that the transferor retains any proprietary interest in the enterprise. On the contrary, he becomes a creditor of the transferee; . . . . 308 U.S. at 420–421, 60 S.Ct. at 316.

This court has considered the continuity of interest requirement on at least two occasions. In Miller v. Commissioner of Internal Revenue, 84 F.2d 415 (6th Cir. 1936), in reliance on Helvering v. Minnesota Tea Co., *supra,* we rejected the contention that the relationship of the taxpayer to the assets transferred to an acquiring corporation in a statutory merger or consolidation must continue substantially unchanged. The court noted that the application of the terms, "definite and material interest" and "a substantial part of the value of the thing transferred" must be viewed in light of the facts of each case and that no precise definition is possible. The court held, however, that it is not a requirement for tax-free recognition that the stockholders of the transferring corporation acquire a controlling interest in the transferee. Tax-free status was recognized in this case involving a merger where stock and cash were received by the transferor. In Commissioner of Internal Revenue v. Segall, 114 F.2d 706 (6th Cir. 1940), a statutory merger in which the assets of the acquired corporation were exchanged for 5% gold debentures payable in five annual installments and guaranteed by the parent of the acquiring survivor corporation was held not to qualify as a tax-free reorganization. Relying on Le Tulle v. Scofield, *supra,* the court held that for a statutory merger to qualify the transferor must retain a proprietary interest in the surviving enterprise in the form of common or preferred stock, saying— "Accordingly, it has been held essential to reorganization that there remain in the transferor or its stockholders a substantial and material continuity of interest in the property transferred. A transfer of all the assets of one company to another for what amounts to a cash consideration is not a reorganization, but a sale, the gain on which, if any, is taxable." 114 F.2d at 708–709. The same result was reached in Roebling v. Commissioner of Internal Revenue, 143 F.2d 810 (3rd Cir.) cert. denied, 323 U. S. 773, 65 S.Ct. 131, 89 L.Ed. 618 (1944), where stock was exchanged solely for bonds. The court found, although the transaction was a true statutory merger under the law of New Jersey, that no continuity of interest existed because the shareholders of the acquired corporation had a proprietary interest before the merger and, as bondholders, were only creditors afterward.

These cases teach us, then, that tax-free reorganization treatment under § 368 does not automatically follow from the fact that a true statutory merger or consolidation is effected under applicable state or federal law. The additional requirement is a "continuity of interest on the part of the transferor corporation or its stockholders." The sellers must acquire "a definite and substantial interest in the affairs of the purchasing corporation" and the interest which they acquire must represent a substantial part of the value of the thing transferred. Nevertheless, there is no requirement that the relationship of the transferor or its shareholders to the assets transferred remain substantially unchanged. The interest which the transferor or its shareholders acquire must be at least in substantial part a proprietary or equity interest and where only cash or debt obligations of the transferee are received there is no qualifying reorganization.

The present case is made difficult because of the rather unique capital structure of savings and loan associations. The greater portion of the capital of Parma was represented by savings accounts and all of the capital of West Side consisted of savings accounts representing authorized share interests. While conceding that Internal Revenue Code 26 U.S.C. § 7701, defines corporations to include associations, and stock to include shares in an association, and shareholders to include members in an association, the government nevertheless maintains that the share interests in West Side received by the former shareholders of Parma did not maintain in them a "continuity of proprietary interest." Much is made of the terminology and relative position of items on the Parma pre-merger balance sheet. The government stresses the fact that prior to merger Parma had two distinct classes of contributors to its capital. The holders of the $200 par value stock had the traditional attributes of shareholders while the holders of savings accounts were in more of a debtor-creditor rela-

tionship to the association. On the other hand, it is stated, after merger the former Parma shareholders and holders of savings accounts occupy precisely the same position as members of the federal mutual savings and loan association. All have a dual relationship to the association, being in the position of creditors as holders of savings accounts and, as members, possessing certain proprietary rights, including the right to vote, the right to share the association's earnings and in its assets upon liquidation. While admitting that whatever equity or proprietary interest exists in a federal savings and loan association resides in its depositors and borrowers, the government maintains that each depositor's equity or proprietary interest is minimal compared to his rights as a creditor.

The position of the Internal Revenue Service with respect to mergers and consolidations of savings and loan associations, has been set forth in a series of recent revenue rulings. In Rev.Rul. 69–3, 69–1 C.B. 103, it was held that acquisition of all of the assets of one federally chartered mutual savings and loan association by another similar association, when accomplished as a statutory merger qualifies as a tax-free reorganization. On the other hand, in Rev.Rul. 69–6, 69–1 C.B. 104, a merger substantially like the one involved in this case where a state-chartered association with capital stock was merged into a federal mutual savings and loan was held not to constitute a reorganization within the provisions of § 368. Finally, in Rev.Rul. 69–646, 69–2 C.B. 54 the merger of a savings and loan association having only savings shares into one having savings shares and guaranty shares was held to qualify as a tax-free reorganization. In Rev.Rul. 69–6, one of the factors which was relied upon to find that the merger did not qualify was that the obligation to deliver cash deposits was not severable from the obligation to deliver a proprietary interest to the former shareholders of the acquired association. Yet in Rev.Rul. 69–646, the Service apparently determined that the obligation was

severable and that the requirements were satisfied by issuing two different types of securities to persons who had formerly owned only one security, a savings account in the acquired association.

A few cases have been decided involving savings and loan associations which have attempted to effect reorganization under Section 368. Because of the different methods of capitalization which have developed in the various states as the savings and loan industry has grown in this country, none of the cases is identical with the case under consideration. In Everett v. United States, 448 F.2d 357 (10th Cir. 1971), the court dealt with the transfer of the assets of a state-chartered building and loan association to a federal savings and loan. In addition to an exchange of savings shares the acquiring federal association paid the state building and loan association $65,000 in cash which was used to liquidate its "permanent shares" and the government asserted an income tax deficiency against the state-chartered association for its final year. The court treated the transaction as a transfer of assets under § 368(a)(1)(C) of the Internal Revenue Code rather than a merger or reorganization under § 368(a)(1)(A). The critical issue was whether the assets of the acquired association had been exchanged "solely for voting stock." The court held that full paid and savings shares of a federally chartered savings and loan association do constitute voting stock. Thus the somewhat stricter test for continuity of interest provided in § 368(a)(1)(C) (see Helvering v. Southwest Consolidated Corporation, 315 U.S. 194, 198, 62 S. Ct. 546, 86 L.Ed. 789 (1942)) was found to have been satisfied in a merger by a state-chartered building and loan having capital stock into a federal mutually owned association.

In Home Savings and Loan Association v. United States, 223 F.Supp. 134 (S.D.Cal.1963), the question, as here, was whether the bad debt reserves of a merged corporation became accelerated into income as a result of the merger. That case involved the merger of two state-chartered savings and loan associations of California, and the court held that there was an adequate continuity of interest. The decision was not appealed and the holding is consistent with the position of the Internal Revenue Service as expressed in Revenue Ruling 69–3, *supra*. A more recent district court case involved the merger of two California state-chartered savings and loan associations into a third. Holders of investment certificates in one of the acquired associations exchanged them for withdrawable shares in the surviving association. Holders of withdrawable share accounts in the other acquired association exchanged them for withdrawable share accounts in the acquiring association. Both acquired associations had outstanding "guarantee stock" all of which was first purchased by the acquiring association and then cancelled concurrently with the merger. The court held that even after the acquiring association had purchased all of the guarantee stock in both of the acquired associations the owners of shares and certificates in those associations retained an equity interest. It held that the holders of withdrawable shares and investment certificate holders of the acquired associations were among the owners of the capital stock both of the transferor and transferee associations and that there was a continuity of interest which was maintained. The fact that the investment certificate holders of one of the acquired associations had no voting rights was held to be immaterial in reliance upon Nelson Co. v. Helvering, *supra*. The court specifically refused to adopt the argument of the government, made also in this case, that since a depositor in a savings and loan association is a creditor for some purposes he must be considered a creditor of the association for all purposes. Home Savings & Loan Association v. United States (C.D.Cal. 4/11/73), 73–2 USTC para. 9609 (CCH 8/22/73).

The government's argument that the requirement of a continuity of proprie-

tary interest was not satisfied in the Parma-West Side merger consists basically of these contentions: (1) The former shareholders of Parma gave up pure equity in exchange for property which, though it has some minor attributes of equity, is nevertheless so liquid that it should be treated as cash equivalent. Thus in reality, these shareholders have merely sold their stock. (2) The shareholders were the owners of Parma, and the only persons entitled to vote and to share in its reserves and undivided profits in the event of liquidation, and after merger they are depositor-creditors of West Side. It is undisputed that the by-laws of West Side require a thirty-day notice before funds can be withdrawn, but the government states that in actual practice such notice is not required and that savings accounts are withdrawable at any time without notice. It also points to the fact that savings accounts of West Side are federally insured, but the record does not disclose whether some accounts of former shareholders of Parma exceed the amount of federal insurance coverage. The government relies on the fact that the voting rights of savings account owners in West Side are more restricted than the rights enjoyed by the former shareholders of Parma and are diluted by the fact that other savings depositors and borrowers are also permitted to vote. It contends, finally, that no additional value adheres to a savings account in a federal savings and loan association because of the incidental proprietary rights which go along with membership. Thus, it is said, in reality, a withdrawable savings share account in a federal savings and loan association is nothing more than the equivalent of a demand deposit bank account.

As to the status of savings account holders, we note that item 6 of Chapter K Revised of West Side Federal Savings and Loan Association provides in part as follows:

Holders of savings accounts for which application for withdrawal has been made shall remain holders of savings accounts until paid and shall not become creditors.

Furthermore since a savings account is the only proprietary interest available in a federal mutual savings and loan association and the former shareholders of Parma received such accounts in exchange for their stock, it is improper to ignore the proprietary rights included in what they received and concentrate only on their rights as creditors. In each of the cases dealing with continuity of interest the focus has been on the nature of the interest in the acquiring corporation which is received in the exchange. The courts do not conduct an examination to determine whether the shareholder of the merged corporation receives more or less of a proprietary interest than he surrendered. Instead, it is an analysis to determine if a proprietary interest is received, and the fact that what is received may be a mixture of proprietary interests and debt instruments of the acquiring corporation is not alone determinative. The reasoning of this court as set forth in Miller v. Commissioner of Internal Revenue, *supra*, and Commissioner of Internal Revenue v. Segall, *supra*, carefully following the holdings of the Supreme Court heretofore cited, is controlling in the decision of this case.

We find that each owner of a proprietary interest in Parma acquired a proprietary interest in West Side. Each such shareholder acquired an interest in the affairs of West Side which is definite and material and it represented a substantial part of the value of the stock that was given up. That the interest received need not be identical to that given in exchange is made clear by the language previously quoted from Helvering v. Minnesota Tea Co., *supra*: "True it is that the relationship of the taxpayer to the assets conveyed was substantially changed, but this is not inhibited by the statute."

The judgment of the district court is affirmed.

APPENDIX

Internal Revenue Code of 1954 (26 U.S. C.):

## SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(a) *Reorganization.*—

(1) *In general.*—For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

\* \* \* \* \* \*

(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded;

\* \* \* \* \* \*

## SEC. 381. CARRYOVERS IN CERTAIN CORPORATE ACQUISITIONS.

(a) *General Rule.*—In the case of the acquisition of assets of a corporation by another corporation—

(1) in a distribution to such other corporation to which section 332 (relating to liquidations of subsidiaries) applies, except in a case in which the basis of the assets distributed is determined under section 334(b)(2); or

(2) in a transfer to which section 361 (relating to nonrecognition of gain or loss to corporations) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D) (but only if the requirements of subparagraphs (A) and (B) of section 354

(b)(1) are met), or (F) of section 368(a)(1),

the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).

(b) *Operating rules.*—Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a)(1)—

(1) The taxable year of the distributor or transferor corporation shall end on the date of distribution or transfer.

(2) For purposes of this section, the date of distribution or transfer shall be the day on which the distribution or transfer is completed; except that, under regulations prescribed by the Secretary or his delegate, the date when substantially all of the property has been distributed or transferred may be used if the distributor or transferor corporation ceases all operations, other than liquidating activities, after such date.

(3) The corporation acquiring property in a distribution or transfer described in subsection (a) shall not be entitled to carry back a net operating loss for a taxable year ending after the date of distribution or transfer to a taxable year of the distributor or transferor corporation.

(c) *Items of the Distributor or Transferor Corporation.*—The items referred to in subsection (a) are:

\* \* \* \* \* \*

(4) *Method of accounting.*—The acquiring corporation shall use the method of accounting used by the distributor or transferor corporation on the date of distribution or transfer unless different methods were used by several distributor or transferor corporations or by a distributor or transferor corporation and the acquiring corporation. If different methods

were used, the acquiring corporation shall use the method or combination of methods of computing taxable income adopted pursuant to regulations prescribed by the Secretary or his delegate.

\* \* \* \* \* \*

(23) *Credit under Section 38 for investment in certain depreciable property.*—The acquiring corporation shall take into account (to the extent proper to carry out the purposes of this section and section 38, and under such regulations as may be prescribed by the Secretary or his delegate) the items required to be taken into account for purposes of section 38 in respect of the distributor or transferor corporation.

\* \* \* \* \* \*

## SEC. 7701. DEFINITIONS.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\* \* \* \* \* \*

(3) Corporation.—The term "corporation" includes associations, joint-stock companies, and insurance companies.

\* \* \* \* \* \*

(7) Stock.—The term "stock" includes shares in an association, joint-stock company, or insurance company.

(8) Shareholder.—The term "shareholder" includes a member in an association, joint-stock company, or insurance company. (26 U.S.C. Sec. 7701)

\* \* \* \* \* \*

Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.):

§ 1.368–1 *Purpose and scope of exception of reorganization exchanges.*

\* \* \* \* \* \*

(b) *Purpose.* Under the general rule, upon the exchange of property, gain or loss must be accounted for if the new property differs in a material particular, either in kind or in extent, from the old property. The purpose of the reorganization provisions of the Code is to except from the general rule certain specifically described exchanges incident to such readjustments of corporate structures made in one of the particular ways specified in the Code, as are required by business exigencies and which effect only a readjustment of continuing interest in property under modified corporate forms. Requisite to a reorganization under the Code are a continuity of the business enterprise under the modified corporate form, and (except as provided in section 368(a)(1)(D)) a continuity of interest therein on the part of those persons who, directly or indirectly, were the owners of the enterprise prior to the reorganization. The Code recognizes as a reorganization the amalgamation (occurring in a specified way) of two corporate enterprises under a single corporate structure if there exists among the holders of the stock and securities of either of the old corporations the requisite continuity of interest in the new corporation, but there is not a reorganization if the holders of the stock and securities of the old corporation are merely the holders of short-term notes in the new corporation. In order to exclude transactions not intended to be included, the specifications of the reorganization provisions of the law are precise. Both the terms of the specifications and their underlying assumptions and purposes must be satisfied in order to entitle the taxpayer to the benefit of the exception from the general rule. Accordingly, under the Code, a short-term purchase money note is not a security of a party to a reorganization, an ordinary dividend is to be treated as an ordinary dividend, and a sale is nevertheless to be treated as a sale even though the mechanics of a reorganization have been set up.