The **FIRST FEDERAL SAVINGS AND LOAN ASS'N, etc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. C77–496.

United States District Court, N. D. Ohio, E. D.

April 13, 1978.

Charles F. Ipavec, Richard R. Gygli, La-Porte, Ipavec & Gygli, Cleveland, Ohio, for plaintiff.

James C. Lynch, Asst. U. S. Atty., Cleveland, Ohio, Robert T. Carney, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is an action instituted by the plaintiff, the First Federal Savings and Loan Association of Cleveland (First Federal), as successor in interest to the Keystone Savings and Loan Company (Keystone), pursuant to § 7422(a) of the Internal Revenue Code of 1954 (the Code), 26 U.S.C. § 7422(a), to recover federal income taxes in the amount of $353,912.79 plus $86,490.98 assessed interest paid by the plaintiff as transferee of the assets of Keystone for its short taxable year ended May 31, 1971.

The jurisdiction of the Court is invoked pursuant to the provisions of 28 U.S.C. §§ 1340 and 1346(a)(1).

The matter is now before the Court on the plaintiff's Motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P.

The undisputed facts may be briefly summarized as follows. First Federal is a federally chartered non-stock savings and loan association, constituting a "domestic building and loan association" within the meaning of § 7701(a)(19) of the Code, 26 U.S.C. § 7701(a)(19). On or about December 21, 1970, First Federal entered into a merger agreement with Keystone, a savings and loan association chartered under the laws of the State of Ohio having 2,634 shares of outstanding capital stock, par value $40.00 per share. Pursuant to the merger agreement, Keystone was merged into First Federal, and the plaintiff acquired both the outstanding common stock and savings deposit accounts of Keystone. In return, the holders of Keystone's common stock received savings deposit accounts with First Federal in an amount equal to the book value of Keystone's stock on the effective date of the merger, May 31, 1971. On that date, all of Keystone's assets and liabilities were assumed by the plaintiff, and Keystone's former depositors and shareholders were given savings deposit accounts with First Federal in the amount of $448.08 for each share of Keystone's capital stock held by them. In addition, the former shareholders of Keystone became members of the plaintiff association with the following rights:

MEMBERS. All holders of the association's savings accounts and all borrowers therefrom are members. In the consideration of all questions requiring action by the members of the association, each holder of a savings account shall be permitted to cast one vote for each $100, or fraction there of, of the withdrawal value of his account. A borrowing member shall be permitted, as a borrower, to cast one vote, and to cast the number of votes to which he may be entitled as the holder of a savings account. No member, however, shall cast more than 50 votes. Voting may be by proxy. Any number of

members present at a regular or special meeting of the members shall constitute a quorum. A majority of all votes cast at any meeting of members shall determine any question. * * * (Stip. par. 8.)

For tax purposes, the basis of each of Keystone's assets transferred to First Federal on May 31, 1971 was carried over from Keystone's books. On August 16, 1972, the plaintiff executed a transferee agreement pursuant to which First Federal agreed to assume any tax liabilities of Keystone for Keystone's short taxable year ended May 31, 1971.

The merger was effected pursuant to the law of Ohio with the approval of the Federal Home Loan Bank Board, and was therefore reported to the United States Internal Revenue Service by the plaintiff as a tax-free reorganization within the meaning of either subsection (a)(1)(A) or (a)(1)(C) of § 368 of the Code, 26 U.S.C. § 368.

However, the Internal Revenue Service disallowed tax-free treatment of this transaction, and held that the merger constituted a taxable sale and liquidation of Keystone. Accordingly, First Federal, as transferee of the assets of Keystone, was required to recapture certain investment credits previously claimed by Keystone and to include in its income certain tax benefits previously obtained by Keystone as a result of additions to Keystone's insurance and bad debt reserve. This recapture of investment credits and tax benefits resulted in the $440,403.77 tax assessment challenged by the plaintiff herein.

First Federal thereafter paid the deficiency assessment under protest, and on or about September 2, 1975, filed a timely claim for refund thereof, which was disallowed on May 14, 1976. In accordance with the provisions of § 7422(a) of the Code, this civil action ensued.

Section 361(a) of the Code, 26 U.S.C. § 361(a), provides that "[n]o gain or loss shall be recognized if a corporation a party to a reorganization exchanges property, in pursuance of the plan of reorganization, solely for stock or securities in another corporation a party to the reorganization."

Section 7701(a) of the Code, 26 U.S.C. § 7701(a), defines "corporation" to include associations such as First Federal and Keystone, whose "stock" includes shares in such associations and whose "stockholders" are members thereof.

Section 368(a) of the Code defines the term "reorganization" in pertinent part as follows:

(a) *Reorganization.*—

(1) *In general.*—For purposes of parts I and II and this part, the term "reorganization" means—

(A) a statutory merger or consolidation;

* * * * * *

(C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded.

. . .

■ Common to these definitions is the requirement that a "continuity of proprietary interest" on the part of the transferor corporation or its shareholders must exist in the surviving corporation pursuant to the reorganization if the transaction is to be afforded tax-free treatment. *See Cortland Specialty Co. v. Commissioner of Internal Revenue*, 60 F.2d 937 (2d Cir. 1932).

In *West Side Federal Savings and Loan Association of Fairview Park v. United States*, 494 F.2d 404 (6th Cir. 1974), the Court of Appeals for the Sixth Circuit considered the requirements of § 368 of the Code on facts substantially identical to those presently before this Court. In that case, the plaintiff, West Side Federal Savings and Loan Association of Fairview Park (West Side), a federal savings and loan association, asserted tax-free treatment of its

merger with the Parma Savings Company (Parma), an Ohio state-chartered savings and loan association. In the *West Side Federal* case, the Government contended, as it does in the instant action, that the shareholders' exchange of capital stock in the state-chartered savings and loan association for savings deposit accounts with voting rights in the transferee federal savings and loan association violated the "continuity of interest" requirement of § 368. The Court of Appeals, following an extensive review of the judicial precedent applicable to both mergers and consolidations as defined by § 368(a)(1)(A) of the Code and reorganizations effected pursuant to § 368(a)(1)(C) thereof, as well as relevant rulings of the Internal Revenue Service, concluded that the savings deposit accounts received by the former shareholders of the transferor corporation represented an adequate "continuity of interest" in the successor corporation within the meaning of § 368.

In rejecting the Government's contention that the former shareholders of the transferor corporation became depositor-creditors of the successor federal savings and loan association consequent to the transaction, the Court of Appeals relied upon the relevant provision of the plaintiff's charter:

> As to the status of savings account holders, we note that item 6 of Chapter [*sic*] K Revised of West Side Federal Savings and Loan Association provides in part as follows:
>
> > Holders of savings accounts for which application for withdrawal has been made shall remain holders of savings accounts until paid and shall not become creditors. 494 F.2d at 411

The identical provision is contained in item number 6 of First Federal's Charter N (exhibit C to the stipulations of the parties), thereby precluding treatment of the members' savings deposit accounts in First Federal as nothing more than debt interests in the association.

The Court of Appeals for the Sixth Circuit concluded its analysis as follows:

> Furthermore since a savings account is the only proprietary interest available in

a federal mutual savings and loan association and the former shareholders of Parma received such accounts in exchange for their stock, it is improper to ignore the proprietary rights included in what they received and concentrate only on their rights as creditors. In each of the cases dealing with continuity of interest the focus has been on the nature of the interest in the acquiring corporation which is received in the exchange. The courts do not conduct an examination to determine whether the shareholder of the merged corporation receives more or less of a proprietary interest than he surrendered. Instead, it is an analysis to determine if a proprietary interest is received, and the fact that what is received may be a mixture of proprietary interests and debt instruments of the acquiring corporation is not alone determinative.

\*     \*     \*     \*     \*     \*

> We find that each owner of a proprietary interest in Parma acquired a proprietary interest in West Side. Each such shareholder acquired an interest in the affairs of West Side which is definite and material and it represented a substantial part of the value of the stock that was given up. That the interest received need not be identical to that given in exchange is made clear by the language previously quoted from *Helvering v. Minnesota Tea Co.*, [296 U.S. 378, 386, 56 S.Ct. 269, 80 L.Ed. 284 (1935)]: "True it is that the relationship of the taxpayer to the assets conveyed was substantially changed, but this is not inhibited by the statute." 494 F.2d at 411

Upon a review of the record in its entirety and consideration of the applicable judicial precedent, this Court finds the decision of the Court of Appeals for the Sixth Circuit in *West Side Federal, supra,* dispositive of the issues presented in the instant action. As in *West Side Federal, supra,* the former shareholders of Keystone "acquired an interest in the affairs" of First Federal by virtue of the Agreement and Plan of Merger effective May 31, 1971 between First Federal and Keystone "which is defi-

nite and material and . . . represented a substantial part of the value of the stock that was given up," *id.* at 411. Accordingly, the plaintiff properly reported this transaction to the Internal Revenue Service as a tax-free reorganization within the meaning of § 368(a)(1)(A) or (C) of the Code, and the decision of the Commissioner to disallow such treatment of this transaction was improper.

It appearing, therefore, that there exist no genuine issues of material fact, and that the plaintiff is entitled to judgment as a matter of law, pursuant to Rule 56, Fed.R. Civ.P., *see Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962), the plaintiff's Motion for summary judgment is hereby granted, and judgment is hereby entered in its favor in the amount of $440,403.77 plus interest thereon as provided by law, and costs of this action.

IT IS SO ORDERED.