SHELLEY J. OWENS, aka SHELLEY J. LITWILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; SHELLEY J. OWENS and BRUCE W. OWENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Owens v. Commissioner
Docket Nos. 9412-79, 11711-80.
United States Tax Court
T.C. Memo 1983-302; 1983 Tax Ct. Memo LEXIS 487; 46 T.C.M. (CCH) 293; T.C.M. (RIA) 83302; May 26, 1983. William R. Nicholas and Karen Smith Bryan, *488 for the petitioners. Edward M. Robbins, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Docket No.
Year
Deficiency
9412-79
1975
$1,179,048
11711-80
1976
1,355,700
1977
2,044
These cases are consolidated for purposes of trial, briefing, and opinion, and are presently before the Court on respondent's motion for partial summary judgment and petitioners' cross-motion for summary judgment. The only issue is whether petitioner Shelley J. Owen's exchange of guarantee stock in a state chartered savings and loan association for savings accounts in a federally chartered mutual savings and loan association qualifies as a tax-free exchange under section 354(a). [1]
*489 Petitioners, Shelley J. and Bruce W. Owens, were residents of Palos Verdes Estates, Calif., when they filed their petitions in this case. Between the time respondent's motion was set for hearing and the date the hearing was actually held, this Court filed its opinion in Paulsen v. Commissioner,78 T.C. 291 (1982), on appeal (9th Cir., June 7, 1982), wherein we held a similar type exchange qualified for nonrecognition treatment. Following a line of cases, we held savings accounts in a federally chartered mutual savings and loan association is "stock" for purposes of the provisions of the Internal Revenue Code relating to tax-free reorganization. Paulsen,supra, following Capital S & L Ass'n. v. United States,607 F.2d 970 (Ct. Cl. 1979); West Side Fed. S & L Ass'n. of Fairview Pk. v. United States,494 F.2d 404 (6th Cir. 1974), and Everett v. United States,448 F.2d 357 (10th Cir. 1971). At the hearing, the parties directed oral argument as to what effect Paulsen has on the instant case. Respondent argues *490 that under the facts of this case, Paulsen is distinguishable, while petitioners argue Paulsen is controlling. We agree with petitioners. Briefly, the undisputed facts are as follows: As of January 2, 1975, petitioner owned 125,685 shares of the guarantee stock of Pacific Savings and Loan Association (Pacific), a California state chartered savings and loan association. She had a basis of $8,618 in such stock. Pursuant to an "Agreement and Plan of Reorganization" (the Agreement), petitioner exchanged her guarantee stock in the state association for $3,661,204 in savings accounts in a federal association. Under the Agreement, this transaction took place in three steps--the Exchange Offer, the Plan of Coversion, and the Merger. Each step was expressly conditioned upon successful consummation of the other two, and the entire transaction took place and was completed on January 2, 1975. The first phase of the Agreement consisted of the "Exchange Offer" wherein California Federal Savings and Loan Association (Old Cal Fed) acquired substantially all the outstanding shares of Pacific's guarantee stock. Each share of guarantee stock of Pacific was exchanged for a $29.13 deposit *491 in an Old Cal Fed savings account, subject to the restriction that such deposits could not be withdrawn for one year. [2] Then, pursuant to the "Plan of Conversion", Pacific converted from a state-chartered savings and loan into a federal savings and loan known as Pacific Federal Savings and Loan Association (Pacific Federal). Under the final phase of the Agreement, Old Cal Fed merged "downstream" into Pacific Federal in compliance with applicable state and Federal law. [3] Holders of Old Cal Fed savings accounts were issued savings accounts of the same amount in Pacific Federal. The surviving association, Pacific Federal, immediately changed its name to California Federal Savings and Loan Association (hereafter New Cal Fed). Petitioner disposed of her exchange accounts in 1981. *492 Step-Transaction
Respondent points out that this merger was accomplished in three phases whereas Paulsen involved the direct merger of a state association with a federal association.Respondent's primary argument is that the initial phase of this transaction constitutes a stock-for-stock Type B reorganization. Since holders of Old Cal Fed savings accounts were limited to 50 votes regardless of the size of their account, respondent argues the "solely for all or a part of its voting stock" requirement of section 368(a)(1)(B) has not been met. Thus, respondent concludes the transaction fails to meet the definition of a reorganization. The essence of respondent's argument is that the exchange phase of this transaction is to be treated separate and distinct from the transaction as a whole. We do not agree.
Under the step-transaction doctrine, a series of formally separate steps is consolidated to determine the overall tax consequences of a transaction. This doctrine has been applied time and again by this and other courts to determine whether certain transactions were part of, or *493 pursuant to, a plan of reorganization. See Helvering v. Limestone Co.,315 U.S. 179 (1942); Security Industrial Insurance Co. v. United States,702 F.2d 1234 (5th Cir., 1983); Superior Coach of Florida v. Commissioner, 80 T.C.     (May 16, 1982); King Enterprises, Inc. v. United States,418 F.2d 511 (Ct. Cl. 1969); Yoc Heating Corp. v. Commissioner,61 T.C. 168 (1973); Nye v. Commissioner,50 T.C. 203 (1968). Under the mutual interdependence test, transactions are collapsed if "they are so interdependent that the legal relations created by one transaction would have been fruitless without the completion of the series." American Bantam Car Co. v. Commissioner,11 T.C. 397, 405 (1948), affd. 177 F.2d 513 (3d Cir. 1949). The Agreement herein stated that Old Cal Fed would acquire Pacific in a "single transaction" to be accomplished in three simultaneous steps. Moreover, no one step could have been consummated without the other two. The steps were, in the clearest way, mutually interdependent. Thus, under the authority of American Bantam Car, all steps *494 must be collapsed, and petitioner's exchange of Pacific guarantee stock for Old Cal Fed accounts must be considered an integral part of a Type A reorganization under which Pacific and Old Cal Fed merged. [4]
*495 Respondent argues the initial phase of the transaction should be treated separately from the rest of the transaction. The argues it was intentionally structured as a multi-step transaction and that petitioners are therefore stuck with the form. Certainly, the "Exchange Offer" constituted one phase of the entire transaction and, just as certain, the principals intended this phase to exist. But respondent fails to account for the fact that it is equally clear the principals intended the acquisition be accomplished in a unitary transaction. As in any case where the step-transaction applies, the component steps are clearly intended to exist. At the heart of the step-transaction, however, is that tax consequences do not follow from each component step; rather, they must be consolidated. Thus, once it is determined the step-transaction applies, as we find herein, the tax consequences of one component step are irrelevant. [5]
*496 Hybrid Stock Theory
Neither can we agree with respondent that this case falls outside the nonrecognition provisions of section 354 since petitioners are deemed to have received "boot." Respondent's argument is based on the "hybrid stock theory." He reasons that since the savings accounts possess both equity and debt features, they can be segregated as such. The debt portion, respondent argues, is equal to the cash equivalent of the savings accounts whereas the equity portion is made up of whatever slight equity features might be present. Thus, respondent concludes petitioner received "boot" equal to the face amount of the savings accounts. This Court had held such accounts are "stock" for purposes of the provisions of the Internal Revenue Code relating to tax-free reorganizations. Paulsen at 298. Such provisions include sections 354 and 356. Moreover, in rejecting the same argument made by respondent herein, this Court has held such accounts cannot be separated into cash deposits and proprietary rights; thus, they do not constitute "other property" (boot) for purposes of *497 section 356(a)(1). Paulsen at 303-304, note 25. Pointing out that this argument was rejected in a footnote at the end of the opinion following 23 pages of text which dealt with the issue of whether the reorganization failed due to lack of continuity of interest, respondent asks us to reconsider the argument. [6] We decline respondent's invitation, and we reaffirm the position we have taken in footnote 25 of Paulsen. Accordingly, we hold the shareholders need not recognize gain upon receipt of the savings accounts. *498 To be sure, the courts have recognized that savings accounts in a federally chartered savings and loan association possess certain indicia of a creditor-debtor relationship. None, however, has implied the various attributes are saverable. Indeed, the debt and equity components are indistinguishable. On the rationale that somebody owns the association (those owners necessarily being the savings account holders), the courts have consistently held such accounts are stock for purposes of the nonrecognition sections. Paulsen,supra;Capital S & L Ass'n. v. United States,607 F.2d 970 (Ct. Cl. 1979); West Side Fed. S & L Ass'n of Fairview Pk. v. United States,494 F.2d 404 (6th Cir. 1974); Everett v. United States,448 F.2d 357 (10th Cir. 1971); Rocky Mtn. Fed. Sav. & L Ass'n v. United States,473 F. Supp. 779 (D. Wyo. 1979); First Federal Sav. & Loan Ass'n v. United States,452 F. Supp. 32 (N.D. Ohio 1978). Given prior case law allowing nonrecognition at the corporate level and respondent's argument that Paulsen is wrong as to the section 356 "boot" issue, respondent is essentially *499 arguing a different result should apply at the shareholder level. Were we to accept respondent's position, nonrecognition treatment would be accorded at the corporate level and, at the same time, all gain at the shareholder level would be recognized, an admittedly anomalous result. If the accounts are stock for purposes of the definitional provisions of section 368, they are also stock within the meaning of sections 354 and 356. In summary, respondent has attacked Paulsen from every conceivable angle. We regard his efforts as an unsuccessful attempt to undermine case law he is obviously dissatisfied with, namely, the fact that savings accounts are treated as stock. However, this Court and other courts have consistently held against respondent on this issue and we see no reason to depart from this line of authority. We find the transaction herein is a Type A reorganization virtually indistinguishable from Paulsen and, accordingly, we hold for petitioners on this issue. To reflect the foregoing, Appropriate orders will be entered.
Footnotes
1. All section references are to the Interal Revenue Code of 1954, as amended. The deficiencies for 1975 and 1976 arise out of the same item of capital gain. The 1975 deficiency is based on respondent's determination that the exchange did not qualify for nonrecognition treatment. Alternatively, respondent determined a deficiency for 1976 when certain restrictions on the savings accounts petitioner received in the exchange expired. Petitioners dispute in full both deficiencies. At the hearing, respondent represented that if the issue is decided in favor of petitioners, "that's the end of the case," and if decided for respondent, some mathematical computations will be necessary.↩
2. Pacific guarantee stockholders who did not accept the "Exchange Offer" had their guarantee stock converted to Pacific Federl accounts as part of the conversion phase. Unlike the exchange accounts, these accounts carried no one-year restriction. ↩
3. The shares of Pacific guarantee stock which Old Cal Fed acquired through the "Exchange Offer" were cancelled once the entire transaction was completed.↩
4. Given our holding, we need not address respondent's argument that, if the steps are treated separately, the initial exchange phase of the transaction fails to meet the "solely for * * * voting stock" requirement of a Type B reorganization. Respondent's argument is based on the fact that there is a cap of 50 on the number of votes any shareholder may receive. He points out that, even though petitioner received $3,661,204 worth of savings accounts, he had no more voting power than somebody with $5,000 worth of savings accounts. In this regard, we note the Tenth Circuit Court of Appeals has held that savings accounts of a federally chartered savings and loan association which was also charted under 12 U.S.C., sec. 1461 et seq. (1976), met the "solely for * * * voting stock" requirement in the context of a Type C reorganization. Everett v. United States,448 F.2d 357 (10th Cir. 1971). Respondent submits Everett is of no value since there is no indication there was a similar limitation on voting rights, or at least, it was not brought to the Court's attention. However, the fact that the association was chartered under the same provisions of the United States Code raises a presumption there was an identical cap on voting shares. Thus, on what appears to be identical facts, respondent is raising an argument which was not raised by the Government in Everett.↩ As we have stated, however, we need not address this issue.
5. The parties argue the relevance and effect of certain private letter rulings requested by Pacific and Old Cal Fed prior to the time the merger agreement was entered into. Respondent states, "The ruling request plainly argues that the acquisition of Pacific by Old Cal Fed was a taxable stock purchase followed by the downstream Type-A reorganization." Petitioners assert a simple reading of the language of the ruling request demonstrates that no ruling on whether gain would be required to be recognized was requested, but only a request as to the nature of any gain, capital or ordinary, if gain were required to be recognized. Whatever legal maneuvers may have been taking place at this point, they are irrelevant to our consideration.↩
6. Although it is not clear, apparently this is why respondent also argues the transaction, even if viewed as an integrated transaction, constitutes a Type E 78 T.C. 291 (1982), on appeal (9th Cir., June 7, 1982), -- a Type A reorganization and/or (2) there is authority that a Type E reorganization is not subject to the continuity of interest doctrine. See Hickok v. Commissioner,32 T.C. 80 (1959), and Rev. Rul. 77-415, 1977-2 C.B. 311. In any event, this is not a Type E reorganization. When Old Cal Fed merged into Pacific Federal, Pacific Federal acquired all the assets and assumed all the liabilities of Old Cal Fed. This is more than a recapitalization which contemplates a "reshuffling of a capital structure within the framework of an existing corporation." Helvering v. Southwest Corp.,315 U.S. 194, 195↩ (1942). This is a combination of two existing entities, not the recapitalization of a single entity. That petitioner started with guarantee stock of Pacific and ended up with savings accounts in Pacific Federal does not mean, as respondent argues, that this was a recapitalization.